388 So.2d 377 (1980)
Laura L. Moga, wife of Norris Paul DUBROC
v.
Norris Paul DUBROC.
No. 66902.
Supreme Court of Louisiana.
September 4, 1980.
Rehearing Denied October 6, 1980.
Roger I. Dallam, Greenberg & Dallam, Gretna, for plaintiff-applicant.
J. Wensles Parra, Jr., New Orleans, for defendant-respondent.
DENNIS, Justice.[*]
The issue presented by this child support case is whether a court may enforce an agreement between divorced parents to suspend the mother's right to receive child support payments under a judgment while the father supports and maintains the child in his own home. The trial court refused to enforce the agreement and awarded the *378 mother a judgment for past due support payments. The court of appeal reversed, concluding that the agreement to suspend support payments was enforceable. 380 So.2d 672 (La.App. 4th Cir. 1980). We affirm. An agreement between divorced parents to suspend the mother's right to receive child support payments while the father supports and maintains the child in his own home is enforceable if it promotes the best interest of the child.
Laura Moga and Norris Dubroc were divorced on January 10, 1975. The trial court gave custody of their two children, Aubry and Deborah, to Ms. Moga and ordered Mr. Dubroc to pay $250 per month in child support. In the early part of February, 1975, however, Ms. Moga no longer wanted custody of her son, Aubry, and she proposed to Mr. Dubroc that he care for the child. In exchange for the custody, he told Ms. Moga that he would pay only $125 per month, a pro rata reduction of the child support award. Although Ms. Moga's testimony is equivocal about her assent to the reduction, the evidence indicates clearly that she agreed to the reduction of the alimony in exchange for relief from her obligation to take care of Aubry. For the next four years the parties fulfilled the conditions of their custody/support agreement. Mr. Dubroc continued to take care of the son while paying Ms. Moga $125 per month in support of their daughter. Neither party complained of the arrangement until Ms. Moga instituted this rule to make past due support executory.
In the present matter, Ms. Moga seeks to recover past due child support to which the 1975 judgment allegedly entitles her. Mr. Dubroc filed a cross rule seeking a change of custody of Aubry. The trial judge found in favor of the plaintiff on the arrearages, and ordered the defendant to pay $4,500 in past due support. He concluded that the only manner in which a court-ordered child support obligation could be altered is through a suit properly instituted. He rendered judgment in Ms. Moga's favor for past due child support. Regarding future custody and support, however, the trial court awarded custody of Aubry to his father and reduced support payments to $150 per month. Mr. Dubroc appealed only from the judgment for past due child support.
In reversing the trial judge on the issue of arrearages, the court of appeal found that the parties orally agreed to reduce Mr. Dubroc's support payments and to put Aubry in his custody. The court concluded that this agreement was more than a wife's acquiescence, and the husband was due credit for the child's support in accordance with the agreement. Supporting its holding, the court of appeal distinguished Halcomb v. Halcomb, 352 So.2d 1013 (La.1977), which the trial judge relied upon, stating that Halcomb involved unilateral action by the husband in reducing his support payments.
We agree with the court of appeal that the evidence shows that Ms. Moga and Mr. Dubroc orally agreed to alter the 1975 custody decree. The wife voluntarily assented to a 50% reduction in support payments during the time the child was to live with his father. Nothing in this arrangement affected the welfare of the children, and, in fact, it appears that the change of custody served their best interests, for Ms. Moga found that she could not capably care for her son. Our problem is to determine if the court of appeal properly distinguished Halcomb, which contains language indicating that divorced spouses cannot alter a custody decree by conventional agreements.
In Halcomb we held that a husband could not unilaterally reduce his child support payments by a proportionate amount because one of several children has reached the age of majority. The wife's failure to complain during the six years between the custody decree and her rule to make past due child support executory was of no moment, for under settled law, the wife's mere acquiescence in the husband's failure to pay the full amount of support does not amount to a waiver. Pisciotto v. Crucia, 224 La. 862, 71 So.2d 226 (1954); Gehrkin v. Gehrkin, 216 La. 950, 45 So.2d 89 (1950); Snow v. Snow, 188 La. 660, 177 So. 793 (1937). We stated in Halcomb,
"Reduction of or discharge from a judgment condemning one to pay alimony *379 must ... be sued for by the party against whom the judgment was rendered.... In the absence of such suit, however, the judgment cannot be altered or modified ... except in certain instances where the award is terminated by operation of law. An example of an automatic revocation of alimony is when an award in favor of a wife is revoked when she remarries." La.C.C. art. 160.
Our Halcomb opinion, though it dealt specifically with unilateral action by the husband to reduce his child support payments, may be read to apply to all cases in which the parties attempt to change the support award out of court.
Halcomb and the cases upon which Halcomb relies (e. g., Pisciotto, supra) rest on a strong policy in the area of child custody judgments to safeguard the sanctity of judgments and the orderly processes of law, and to prevent husbands from invoking "self-help." It is an effort by the courts to prevent overreaching by husbands compelled to pay estranged wives support for their children. The cases have interpreted Civil Code Article 232 to require this result, namely, to require parties to resort to the courts for any alteration in a custody decree.
We find nothing in the Civil Code or the Code of Civil Procedure to compel the interpretation set forth in Halcomb et al. Article 227 of the Civil Code provides:
"Fathers and mothers, by the very act of marrying, contract together the obligation of supporting, maintaining, and educating their children."
Article 230 provides:
"By alimony we understand what is necessary for the nourishment, lodging and support of the person who claims it.
"It includes education, when the person to whom the alimony is due is a minor."
Article 232, which is directly at issue herein, provides:
"When the person who gives or receives alimony is replaced in such a situation that the one can no longer give, or that the other is no longer in need of it, in whole or in part, the discharge from or reduction of the alimony may be sued for and granted. (emphasis added)
Under the Code of Civil Procedure, the proper method for obtaining alimony arrearages is through a contradictory motion to have the amount of past due alimony determined and made executory. La.C.C.P. art. 3945.
The Civil Code nowhere mandates a lawsuit for a change in alimony, and the Code of Civil Procedure merely provides for the proper procedure in seeking arrearages. This Court in Halcomb and earlier in Pisciotto engrafted a jurisprudential rule onto the alimony statutes to the effect that absent a lawsuit to alter an alimony decree the plaintiff in a rule for arrearages would be entitled to the full amount under the prior judgment up to three years prior to the rule.[1]
This Court has recognized that the duty of a parent to support his children is an obligation imposed by law. La.C.C. arts. 227, 229; Fazio v. Krieger, 226 La. 511, 76 So.2d 713 (1954). However, care must be taken, as Planiol observes, not to confuse the special duty imposed on a father and a mother toward their children with the more general obligation called the alimentary obligation.[2] 1 M. Planiol, Civil Law Treatise, pt. 2, § 1682 at p. 40 (12th ed. La.St.L.Inst.Transl.1959). The child is the veritable *380 creditor of each parent's unilateral obligation for his upbringing, with the special expenses it entails. Planiol, § 1682. Despite the wording of Article 227, quoted supra, what obliges parents to nourish and rear their children is the fact of maternity or paternity and not that of marriage. Planiol, § 1681. To facilitate the enforcement of this obligation, however, each spouse is given, in his or her own name, a right of action against the spouse without custody to compel him or her to turn over in advance the money necessary to contribute toward the child's maintenance. Walder v. Walder, 159 La. 231, 105 So. 300 (1925); Simon v. Calvert, 289 So.2d 567 (La.App. 3rd Cir. 1974), writs refused 293 So.2d 187 (La.); cf. La.R.S. 9:291; La. C.C.P. art. 3945; Planiol, § 1686.
Since the parent's duty of support and upbringing is a legal duty owed to the child, it cannot be renounced or suspended.[3] There is no prohibition, however, expressed by the law against a spouse's agreement to suspend his right to compel the other parent without custody to turn over to him in advance money necessary for the child's maintenance. Of course, an essential prerequisite to such a conventional modification of a parent's right to receive support payments is implied. The parent may not, by suspension of this right, thwart the purpose for which the right is established, i. e., the enforcement of the child's right to support and upbringing.
For these reasons, an agreement by a parent to suspend his right to receive child support payments will not be enforced unless it meets the requisites for a conventional obligation and fosters the continued support and upbringing of the child. To allow the parent to suspend his right to receive support payments under circumstances contrary to the child's interests, would be inimical to the ultimate goal of support and upbringing of the child. On the other hand, if the parties clearly agree to a suspension of the payments, and such agreement does not interrupt the child's maintenance or upbringing or otherwise work to his detriment, the agreement should be enforceable.
Applying these precepts to the present case, we conclude that the agreement between Ms. Moga and Mr. Dubroc to suspend one-half of the child support payments attributable to the maintenance of their son Aubry while he was being cared for in his father's home is enforceable. Accordingly, Ms. Moga was not entitled to judgment for child support payments with respect to the amount she agreed to suspend during this period.
For the foregoing reasons, we affirm the judgment of the court of appeal.
AFFIRMED.
MARCUS, J., dissents, being of the opinion that the ruling of the trial judge was correct.
NOTES
[*] The Honorable Gerald P. Fedoroff participated in this decision as an Associate Justice pro tempore.
[1] Actions for arrearages in alimony prescribe in three years. La.C.C. art. 3538.
[2] "Care must be taken not to confuse the special duty imposed upon a father and a mother toward their children with the much more general obligation called the alimentary obligation. The alimentary obligation is reciprocal in nature. The duty of parents toward their minor children, by its very nature, is unilateral. The alimentary obligation lasts throughout life. The duty of parents ceases at their child's majority. After its majority, a child may still have a right to receive sustenance, but under the ordinary conditions applicable to it, that is when it is in need. Its upbringing, with the special expenses it entails, is finished."
[3] Neither the parents nor a court decree can permanently set aside the duty of support. Walder v. Walder, supra. In fact, according to Aubry & Rau, "A person competent to make a renunciation may only renounce rights or faculties established in his private interest. On the contrary, rights or faculties accorded to a person in the interest of public order rather than in his private interest are not susceptible of becoming the object of a renunciation. The same is true of rights which, according to their nature, are to be considered as placed out of commerce or as excluding any convention. Thus, one may not renounce rights deriving from marital or paternal authority on the persons, respectively, of the wife or children. Nor can one renounce the attributes and the qualities of status or alimonies due by virtue of the law or of an act of liberality." 4 C. Aubry & C. Rau, Droit Civil Francais, § 323 (6th ed. Bartin 1942), in A. N. Yiannopoulos, 1 Civil Law Translations 219 (1965).