561 So.2d 966 (1990)
James ROBINSON
v.
Earlene Faulkner ROBINSON.
No. 89-CA-1738.
Court of Appeal of Louisiana, Fourth Circuit.
May 15, 1990.
R. Justin Garon, Garon, Brener & McNeely, New Orleans, for plaintiff/appellee.
Charlton B. Ogden, III, Ogden & Ogden, New Orleans, for defendant/appellant.
Before SCHOTT, BARRY and LOBRANO, JJ.
LOBRANO, Judge.
Appellant, Earlene Faulkner Robinson, (Earlene) appeals the trial court judgment which rejected her claim against her former husband, James Robinson (James), to make past due alimony executory, and for contempt. The trial judge reasoned that an agreement existed between Earlene and James which terminated the court ordered alimony payments and thus she waived her right to arrearages.
Earlene perfects this appeal asserting first, that as a matter of law an alimony award cannot be terminated by conventional agreement; and, second, that if a conventional agreement can modify or terminate a decree, then there existed no such agreement in this case.
FACTS:
In the divorce proceeding brought by James, the judgment dated March 10, 1980 awarded Earlene permanent alimony in the monthly amount of $575.00. In the subsequent years, Earlene has filed numerous rules for arrearages, the most recent dated March 14, 1989 which is the subject of this appeal. In the instant rule she seeks arrearages from May, 1987.[1]
Earlene is blind, paraplegic and suffering from multiple sclerosis, and has been so since the 1980 permanent alimony decree. She lives in Sacramento, California in an apartment next door to her daughter, Gilda Robinson. Because of her condition, Earlene was unable to appear in court, and her daughter flew in from California to testify on her behalf.
In defense of the rule, James asserted that the parties had entered into an oral agreement that alimony would be terminated. At the hearing he testified that he had flown to California in April, 1987 in order to bring Michael, one of the parties' children, there. He stayed overnight at Earlene's home, and claims that the aforementioned agreement was reached at that time. He testified that the consideration to support this agreement was that Earlene would continue to receive her social security benefits (ranging from $580.00 to *967 $627.00 monthly), and would maintain the status quo with regard to her medicare/medicaid benefits. The testimony indicates that Earlene had not reported the alimony she had previously received on her income tax returns. She apparently feared criminal repercussions for her failure to do so, and she also feared reduction of her social security and/or medicare benefits if she did report it.
Gilda Robinson testified that no such agreement was made. She testified that she was afraid that James would try to coerce her mother into making such an agreement, and therefore she remained with her the entire time that James was present.[2] Gilda testified that James repeatedly appealed to her and her brother to convince Earlene to waive the alimony. However, Gilda was adamant in her testimony that there was no such agreement.
The trial judge found that there must have been an agreement to terminate alimony, stating that, "In light of the fact that she was receiving more money on social security than she would have been receiving during theas a result of the alimony being paid, the Court is of the opinion that the conversation did occur and that she did release Mr. Robinson of any obligation to pay the support. However, I do not know and do not think that this is going to be the case henceforth, do you understand?" The judgment signed on May 10, 1989 denied the rule, but reinstated alimony as of the date of signing. We reverse.
In Pisciotto v. Crucia, 224 La. 862, 71 So.2d 226 (1954) our Supreme Court, citing Civil Code Article 232,[3] held that "a discharge from the obligation to pay [alimony] may be granted only ... by suit or in answer to a suit to enforce payment." Id. 71 So.2d at 228. Relying on the Pisciotto decision, the Court applied the same reasoning to child support payments in Halcomb v. Halcomb, 352 So.2d 1013 (La. 1977). In that case, the court held that a husband could not unilaterally discontinue child support payments when the child reached majority, and that the wife's "silence" did not constitute a waiver.
Dubroc v. Dubroc, 388 So.2d 377 (La. 1980) was the Supreme Court's first departure from the rule established in Pisciotto, supra. In Dubroc the court held that the parties could modify a child support decree by conventional agreement if it promotes the best interest of the child. The court distinguished its Halcomb decision and specifically noted that neither Article 232 of the Civil Code, nor any other article mandates a lawsuit for a change in alimony. To the contrary, Article 232 states that termination "may be sued for and granted."
Despite the Supreme Court's holding in Dubroc, however, the Third Circuit has refused to apply its rationale to alimony pendente lite. Dauzat v. Dauzat, 391 So.2d 60 (La.App. 3rd Cir.1980). In Dauzat the court held that Dubroc was limited to child support arrearages, that Pisciotto was not overruled and therefore alimony could not be waived by oral agreement. See also, McDonald v. McDonald, 520 So.2d 1114 (La.App. 3rd Cir.1987). But see, Spencer v. Spencer, 472 So.2d 302 (La.App. 3rd Cir.1985) where the court recognized the validity of an agreement, entered into prior to divorce, which established alimony rights.
This court has recognized the right of the parties to modify or terminate child support payments by conventional agreement. Johnson v. Johnson, 430 So.2d 223 (La.App. 4th Cir.1983); Williams v. Williams, 405 So.2d 1277 (La.App. 4th Cir. 1981). In Cabaniss v. Courrege, 482 So.2d 655 (La.App. 4th Cir.1985), writ denied, 486 So.2d 737 (1986) this court recognized that a contradictory motion was the preferable procedure to reduce or modify an alimony award. However, citing Spencer v. Spencer, *968 supra, we also recognized that alimony could be established by private agreement and without judicial proceedings. In Cabaniss there was insufficient evidence to establish an agreement.
Without making a distinction between alimony and child support our brethren of the First Circuit, in Vallaire v. Vallaire, 433 So.2d 315 (La.App. 1st Cir.1983), stated:
"The general rule in Louisiana is an alimony or child support judgment remains in full force and effect in favor of the party to whom it is awarded until the party ordered to pay it has the judgment modified or terminated by the court. [citations omitted]

* * * * * *
The general rule seems to be subject to two exceptions. The first exception is that when the evidence shows the parties have clearly agreed to waive or otherwise modify the court ordered payments, the court will uphold such an agreement and grant an appropriate credit." Id. at 317.
Although Vallaire dealt with child support payments we agree with the above quoted statements. We see no reason to make a distinction between alimony and child support. The rationale of Dubroc is predicated on the fact that there is no express prohibition in the law against a spouse's agreement to modify or terminate her right to compel child support payments. We see no reason why this same rationale should not be applicable to alimony payments.
We therefore hold that, as matter of law, an alimony award can be terminated or modified by agreement of the parties. However, the parties must clearly agree to such a modification and the party relying on such an agreement has the burden of proving same. This is consistent with the standard of proof required by Dubroc and Johnson with respect to child support.[4]
In the instant case there were only two witnesses who testified. It is clear the trial judge believed James' testimony and, ordinarily, we would defer to that credibility call. However, as a matter of law, we conclude that James' testimony standing alone is not sufficient to meet his burden of proof that the parties clearly agreed to the modification. Although the evidence does indicate that Earlene feared both civil and criminal reprecussions from failing to report her alimony as income, the evidence is not clear that she would lose her social security and/or medicare benefits. To the contrary, the evidence suggests only that they might be reduced.
Furthermore, we note from the record that James filed a motion to reduce alimony on July 6, 1987, two months after the alleged agreement of April, 1987.[5] This is totally inconsistent with James' testimony that Earlene agreed to waive future alimony.
Thus we hold that James has not carried his burden of proving by clear and convincing evidence that an agreement to terminate alimony was reached. We therefore reverse the judgment of the trial court and remand for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] A prior rule was filed on February 21, 1989 asserting the same basic arrearages.
[2] Gilda Robinson testified that if she had to leave the room momentarily, her brother James, who along with Gilda looks after Earlene's affairs, was present.
[3] Civil Code Article 232 provides:

"When the persons who gives or received alimony is replaced in such a situation that the one can no longer give, or that the other is no longer in need of it, in whole or in part, the discharge from or reduction of the alimony may be sued for and granted."
[4] In Dubroc the court held that an agreement to suspend child support will not be enforced unless it meets the requisites for a conventional obligation. Extending this rule to an agreement to modify alimony we believe Civil Code Article 1846 is applicable. Because there are no circumstances corroborating the testimony of James who was the only witness, his proof of the contract is insufficient.
[5] Another rule to reduce was filed on February 17, 1989.