# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-684


**MICHAEL GREGORY THEVENOT, SR.**

**VERSUS**

**CHRISTINE DRONET THEVENOT**


\*\*\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT,
PARISH OF ST. LANDRY, NO. 97-4887,
HONORABLE JAMES T. GENOVESE, DISTRICT JUDGE


\*\*\*\*\*\*\*\*\*\*\*\*


## MICHAEL G. SULLIVAN
## JUDGE


\*\*\*\*\*\*\*\*\*\*\*\*


Court composed of Ned E. Doucet, Jr., Chief Judge, Sylvia R. Cooks, and Michael G. Sullivan, Judges.


**REVERSED.**

**David L. Carriere**
**Attorney at Law**
**322 South Market Street**
**Opelousas, Louisiana  70570**
**(337) 948-6217**
**Counsel for Defendant/Appellant:**
    **Christine Dronet Thevenot**

**Thomas E. Gibbs**
**Thomas E. Gibbs & Associates**
**10988 North Harrell's Ferry Road, Suite 19**
**Baton Rouge, Louisiana   70816**
**(225) 272-0020**
**Counsel for Plaintiff/Appellee:**
    **Michael Gregory Thevenot, Sr.**

SULLIVAN, Judge.

Christine Thevenot appeals the trial court's refusal to enforce an extrajudicial agreement she had with Michael Thevenot, Sr., her former husband, for him to pay her child support for their son, Michael Thevenot, Jr. For the following reasons, we reverse the judgment of the trial court.

### Facts

The facts are not in dispute. Michael and Christine were married and had one child, Michael, Jr. They were divorced on July 31, 1998. After the divorce, Michael, Jr. lived with Christine until January 1999. At that time, the trial court designated Michael as domiciliary parent due to Christine's relocation to Houston. In August 1999, Christine was again designated domiciliary parent and has remained domiciliary parent since that time.

Various pleadings filed by the parties in this matter reflect that at different times each party requested child support from the other, but support was never established by the court. Instead, in August 1999, Michael and Christine agreed between themselves that he would pay her $250.00 per month support for Michael, Jr. In July 2001, Michael filed a rule to modify custody. In response, Christine filed exceptions to the rule and filed a rule seeking arrearages in child support or, alternatively, to have child support set. In her rule, Christine alleged that Michael owed her $5,500.00 for the period August 1999 through August 2001. A hearing was held on August 21, 2001. After the hearing, the trial court maintained Christine as the domiciliary parent and ordered that the issue of support be referred to the hearing officer. There was never a referral to the hearing officer.

In June 2002, Michael filed another rule, seeking designation as domiciliary parent. Christine again filed a rule for child support arrearages; she also sought to establish support in accordance with the child support guidelines set forth in La.R.S.

9:315-315.22. In her rule, Christine sought the $5,500.00 she had previously requested and an additional $350.00 in arrearages which she asserted arose from a second agreement she and Michael made in September 2001.

On September 26, 2002, these rules were considered by the hearing officer, who recommended that Michael be ordered to pay Christine $5,500.00 in arrearages. Michael objected to the recommendation, and a hearing was held before the trial court. During the hearing, the trial court recited the following facts which Michael admitted and counsel for the parties stipulated were correct:

> And this is what I understand the facts to be: That at one point in time [Michael] had agreed to pay $250 a month. And during a period of time from January of '99 to August of '99, [Michael] actually kept the child, but there was no support being paid by the mother while [Michael] kept the child. It is not disputed that from August of '99 to July of 2001 the child has been predominantly with the mother and that [Michael has] paid only $500 during that period of time. And the question is whether or not an arrearage is owed from August of '99 through July of 2001 at the rate of an alleged agreement of $250 a month and whether or not that can be made executory in a court of law.
>
> . . . .
>
> I consider that to be a stipulation, because I just gave you the opportunity to present any evidence to the contrary. If there's no evidence to the contrary, that's what I consider having taken place.

The parties also stipulated that in September 2002 they amended their original support agreement, increasing Michael's monthly support obligation from $250.00 to $325.00, and that Michael had not paid $325.00 for the month of July 2002.

After taking the matter under advisement, the trial court determined "there is no legal authority for the legal enforcement of child support created by extra-judicial agreement" and "[a] court order of child support, with a delinquency, must be established before this court can make a judicial determination of an arrearage." Consequently, the trial court refused to award Christine a judgment for the child support arrearages Michael agreed to pay her but did not.

2

***Discussion***

The basis for the payment of child support is found in La.Civ.Code art. 227 which provides:

> Fathers and mothers, by the very act of marrying, contract together the obligation of supporting, maintaining, and educating their children.

"A parent's child support obligation is a primary continuous obligation." *Fink v. Bryant*, 01-987, p. 5 (La. 11/28/01), 801 So.2d 346, 349. It cannot be renounced or suspended. *Dubroc v. Dubroc*, 388 So.2d 377 (La.1980). At issue in *Dubroc* was an agreement by divorced parents to suspend one-half of the father's child support obligation when the child resided with the father. The trial court found the agreement could not be enforced; the court of appeal reversed. The supreme court reviewed the legal obligation of parents to support their children and the right of former spouses to collect that support and found no legal prohibition to a parent's agreement to suspend the right to compel the payment of support, explaining:

> Of course, an essential prerequisite to such a conventional modification of a parent's right to receive support payments is implied. The parent may not, by suspension of this right, thwart the purpose for which the right is established, i.e., the enforcement of the child's right to support and upbringing.
>
> For these reasons, an agreement by a parent to suspend his right to receive child support payments will not be enforced unless it meets the requisites for a conventional obligation and fosters the continued support and upbringing of the child. To allow the parent to suspend his right to receive support payments under circumstances contrary to the child's interests, would be inimical to the ultimate goal of support and upbringing of the child. On the other hand, if the parties clearly agree to a suspension of the payments, and such agreement does not interrupt the child's maintenance or upbringing or otherwise work to his detriment, the agreement should be enforceable.

*Id.* at 380.

Thereafter, in *Aldredge v. Aldredge*, 477 So.2d 73 (La.1985), the supreme court determined that parties who entered into a consent judgment regarding the

payment of child support could waive the requirement of proving a change in circumstances for purposes of a later request for modification of those payments. The court found that the requirement of proving a substantial change of circumstances for modification of support awards was judicially created and that an agreement waiving the requirement does not violate public policies because:

> It merely allows the parties to come to an amicable agreement on the amount of child support or alimony with the reassurance that the court will be able to review this agreement at a later date to ensure its fairness. Extrajudicial resolution of family matters without costly litigation will be promoted, since the parties will be more willing to come to an agreement between themselves, knowing that they may return to litigate the issue should the need arise. As the trial court noted in this case, it would be contrary to good public policy to preclude the parties to a consent decree from stipulating that they could return to litigate the issue of child support without proving a change of circumstances.

*Id.* at 75.

The overriding interest of the State in custody matters is the best interest of the child. *Baggett v. Baggett*, 96-453 (La.App. 3 Cir. 4/23/97), 693 So.2d 264. A logical extension of this tenet and the concepts approved in *Dubroc,* 388 So.2d 377, and *Aldredge*, 477 So.2d 73, is that parents can agree between themselves to establish child support. If they do, there must be proof of a specific agreement. *Casey v. Casey*, 02-246 (La.App. 4 Cir. 5/22/02), 819 So.2d 1108. Such an agreement is enforceable, if it satisfies "the requisites for a conventional obligation and fosters the continued support and upbringing of the child," *Dubroc*, 388 So.2d 380, and does not "derogate from laws enacted for the protection of the public interest." La.Civ.Code art. 7.

Michael contends that there was no specific agreement for him to pay Christine support for Michael, Jr. A close reading of the exchange between the trial judge and Michael, as well as the stipulation entered by counsel, reveals that this contention is without merit. Michael admitted to the trial judge that he agreed to pay Christine

$250.00 per month in support but claimed the agreement was modified. However, he failed to prove that Christine later agreed to a modification of the agreement.

By agreeing on their child support obligation, Michael and Christine simply did what they are legally obligated to do under La.Civ.Code art. 227. There is no indication that the agreement was not in Michael, Jr.'s best interest. The law does not prohibit parents from mutually agreeing to support arrangements for their children, nor does the law require that parents demand and obtain support from each other or that they enforce child support judgments whether rendered by courts or stipulated by the parties and approved by courts.

For these reasons, we reverse the trial court's determination that Michael and Christine's agreement for Michael to pay $250.00 per month for Michael Jr.'s support is not a valid, enforceable agreement. Further, we find that Michael owes Christine $5,500.00 for the period of August 1999 to July 2001, which represents $250.00 per month during that time period less $500.00 paid by Michael.

As previously noted, in September 2002, Michael and Christine agreed to increase Michael's child support from $250.00 per month to $325.00 per month. Michael paid Christine $325.00 per month thereafter, except for the month of August 2002. Accordingly, Michael owes Christine an additional $325.00 for the month of August 2002.

Our consideration of this matter includes the case of *Stogner v. Stogner*, 98-3044 (La. 7/7/99), 739 So.2d 762, where the supreme court held that, when parties stipulate in open court regarding their child support obligation, the adequacy of the of amount of child support established by the stipulation must be reviewed and approved by the trial court in light of the child support guidelines. Michael and Christine did not stipulate before the trial court regarding child support; therefore,

*Stogner*, 739 So.2d 762, is inapplicable to our determination herein. *See* La.R.S. 315.1(A).

### *Decree*

The judgment of the trial court is reversed. Judgment is rendered in favor of Christine Thevenot and against Michael Thevenot in the amount of $5,825.00, together with legal interest thereon from the date of judicial demand until paid. All costs of this appeal are assessed to Michael Thevenot.

**REVERSED.**