NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

19-642

SUSANA F. MOODY

VERSUS

ROSS MOODY

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2011-0528
HONORABLE LILYNN CUTRER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

CANDYCE G. PERRET
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John E. Conery, Van H. Kyzar, and Candyce G. Perret, Judges.

AFFIRMED.

**Frank Granger**
**1135 Lakeshore Drive, 6th Floor**
**Lake Charles, LA   70601**
**(337) 439-2732**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Ross Moody**

**Jo Ann Nixon**
**Glenda M. August & Associates**
**129 W. Pershing Street**
**New Iberia, LA   70560**
**(337) 369-7437**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Susana F. Moody**

**PERRET, Judge.**

Appellant, Susana Moody ("Susana"), seeks review of the trial court's judgment that modified her child support obligations. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY:**

Susana and Ross Moody ("Ross") were married on June 29, 2001, and established a matrimonial domicile in Calcasieu Parish, Louisiana. Four children were born of the marriage, namely D.A.M. on March 31, 2002, D.B.M. on March 16, 2004, and twins, E.S.M. and E.K.M., on March 22, 2009.[1]

Susana filed a petition for divorce on February 3, 2011. Ross accepted service of that petition on February 15, 2011, and a judgment of divorce was rendered on March 6, 2012. The parties operated under a temporary custody order until the trial court rendered a custody judgment on March 12, 2014. In that judgment, Ross was granted sole custody of the children and his child support obligation to Susana was terminated. Susana was granted supervised visitation to be determined by the children's counselor in consultation with her counselor.

On April 14, 2014, Ross filed a Rule to Establish Child Support and Related Financial Obligations. Susana was unable to be served and on May 22, 2014, the court appointed a curator to represent her at the Hearing Officer Conference. On July 14, 2014, the Hearing Officer established child support in the amount of $1,421.00 per month for the minor children. On August 15, 2014, after no

---

[1] Although we are not required to use initials to protect and maintain the privacy of the minor children involved in child support cases pursuant to Uniform Rules, Courts of Appeal, Rule 5-1 and Rule 5-2, we choose to use the initials of the minor children in this opinion. *See Clarke v. Clarke*, 16-669 (La.App. 5 Cir. 4/12/17), 219 So.3d 1228; *Rodock v. Pommier*, 16-809 (La.App. 3 Cir. 2/1/17), 225 So.3d 512, *writ denied*, 17-631 (La. 5/1/2017), 221 So.3d 70.

objections were filed, a judgment was rendered establishing the amount of $1,421.00 per month for the minor children, retroactive to March 12, 2014. Thereafter, on August 26, 2014, Ross filed a Petition to Partition Community Property. A combined detailed descriptive list was filed on January 8, 2015.

On January 26, 2015, the State of Louisiana filed an Ex Parte Motion to Amend Existing Orders and Rule to Show Cause alleging that Susana is in arrears in the amount of $15,631.00 and requested that the March 15, 2014 judgment be amended to designate the State of Louisiana, Department of Children and Family Services, as payee. On March 16, 2015, the trial court ordered an immediate income assignment against Susana.

On August 19, 2015, the Hearing Officer recommended Susana continue paying $1,421.00 a month effective February 1, 2015, with an extra $100.00 a month to go towards the arrears of $15,631.00. Susana appealed the Hearing Officer's recommendation.

On November 5, 2015, Susana filed a Petition to Annul Judgment, Motion and Order to Suspend Child Support, and a Motion for New Trial alleging that she had no knowledge of the previous child support proceedings until she was contacted by her employer for the wage garnishment, and that the August 15, 2014 judgment should be annulled. The trial court denied the motions on November 6, 2015.

On January 8, 2016, Ross filed a Rule for Modification of Child Support seeking to recalculate the child support and pro rata portions of child care costs and unreimbursed medical expenses. A Hearing Officer Conference was held on February 8, 2016.

On February 11, 2016, the Hearing Officer issued a recommendation that provided, in pertinent part, the following: (1) Susana to pay child support in the amount of $1,983.00 a month effective January 8, 2016; (2) uncovered medical expenses are to be considered part of the child support award; (3) uncovered medical expenses exceeding $1,000.00 are to be paid 61% by Ross and 39% by Susana; (4) Ross is allowed to claim [D.A.M.], [D.B.M.] and [E.S.M.] every year; (5) Susana is allowed to claim [E.K.M.] every year provided that she is current on her child support obligation on December 31 of that calendar year; and (6) in the event Susana is not current on support, Ross is allowed to claim [E.K.M.] for that tax year. Both parties appealed the April 6, 2016 recommendation.

On July 5, 2017, Susana filed a Motion and Order For Reduction in Child Support requesting a suspension in her child support obligations due to her mental and physical disabilities.

A trial on these issues was held on September 11, 2017, July 5, 2018, October 11, 2018, February 5, 2019, and February 6, 2019. On April 11, 2019, the trial court signed a judgment that ordered, in pertinent part: (1) Susana pay Ross monthly child support as follows: 2017 = $1,227.00; 2018 = $1,327.00; and 2019 = $2,792.00; (2) Ross is entitled to claim the children as dependents for all state and federal income tax purposes every year, beginning in 2019, and Susana shall be obligated to sign documentation which allows Ross to claim the tax dependency exemption; (3) at the end of 2019, and each year thereafter, Ross shall prepare a spreadsheet calculation on the children's medical and child care expenses for the year and forward with support documentation to Susana so that the difference of what is owed and paid can be determined and the appropriate person can make an equalization payment; (4) the equalization payment shall be paid within sixty days

of being presented with the spreadsheet calculation; and (5) that an immediate income assignment shall be ordered.

On April 30, 2019, the trial court signed a supplemental judgment in order to include Susana's child support obligation of $1,380.00 a month for the year of 2016, which was erroneously omitted from the previous judgment. Susana now appeals the April 30, 2019 amended judgment, alleging solely that the trial court erred in finding that she was voluntarily underemployed.

**STANDARD OF REVIEW:**

The standard of review in a child support case is manifest error and, accordingly, an appellate court will not disturb a child support order unless there is an abuse of discretion or manifest error. *Bergeron v. Bergeron*, 11-130 (La.App. 3 Cir. 10/5/11), 75 So.3d 537, *writ denied*, 11-2466 (La. 1/20/12), 78 So.3d 144. In order for this court to reverse a trial judge's factual findings, manifest error must exist. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). Under a manifest error standard of review, this court can only reverse if it finds, based on the entire record, that there is no reasonable factual basis for the factual finding and that the fact finder is clearly wrong. *Stobart v. State*, *Dep't of Transp. and Dev*., 617 So.2d 880 (La.1993).

Additionally, on review, we are mindful of the basic principles of the Louisiana child support guidelines in La.R.S. 9:315(A), mainly that "child support is a continuous obligation of both parents, children are entitled to share in the current income of both parents, and children should not be the economic victims of divorce or out-of-wedlock birth." A parent's obligation of support and upbringing is a legal duty owed to the child, and it cannot be renounced or suspended. *Dubroc v. Dubroc*, 388 So.2d 377 (La.1980).

4

**DISCUSSION:**

On appeal, Susana contends that the trial court erred in finding her voluntarily underemployed and that "[t]he record clearly establishes that [she] has had health problems in the past, including anxiety issues" that prevent her from working full time. In response, Ross argues that Susana did not support her claim that she could only work part time due to mental and physical disabilities and that the trial court correctly imputed to Susana her income earning potential as a full-time engineer.

Louisiana Civil Code Article 224 states that "[p]arents are obligated to support, maintain, and educate their child." The Louisiana Child Support Guidelines set forth in La.R.S. 9:315, *et seq*. provide the method for implementation of the parental obligation to pay child support. "The guidelines are intended to fairly apportion between the parties the mutual financial obligation they owe their children in an efficient, consistent, and adequate manner. Child support is to be granted in proportion to the needs of the children and the ability of the parents to provide support." *Calhoun v. Calhoun*, 52,915, p. 9 (La.App. 2 Cir. 8/14/19), __ So.3d __, __, (internal citations omitted), *writ denied*, 19-01484 (La. 11/12/19), 282 So.3d 228.

"Under La.R.S. 9:315, income includes potential income of a voluntarily unemployed or underemployed party. Thus, if a party is voluntarily unemployed or underemployed, child support must be based on a determination of his or her income earning potential." *McDaniel v. McDaniel*, 03-1763, p. 4 (La.App. 3 Cir. 5/19/04), 878 So.2d 686, 689. As stated in La.R.S. 9:315.11(A)(1), in pertinent part:

If a party is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of income earning potential, unless the party is physically or mentally incapacitated, or is caring for a child of the parties under the age of five years. In determining the party's income earning potential, the court may consider the most recently published Louisiana Occupational Employment Wage Survey. In determining whether to impute income to a party, the court's considerations shall include, to the extent known, all of the following:

. . . .

(c) Employment and earnings history.

(d) Job skills.

(e) Educational attainment.

(f) Literacy.

(g) Age and health.

In the trial court's written reasons for judgment, it considered the children's medical expenses and child care expenses as well as Susana's circumstances in determining that Susana had not "presented sufficient evidence of a disability and inability to work, or a valid reason for deviating from the standard child support chart." Specially, the trial court stated, in pertinent part:

In order to calculate the child support obligation of Susana, the Court must address several issues including the children's extra medical expenses, child care expenses and Susana's employment.

Children's Medical Expenses and Child Care Expenses

Dr. [Patricia] Post, a clinical psychologist who specialized in children, has worked with the Moody children since July 2013. At the time of trial, she was still involved with the two boys, [D.A.M.] and [D.B.M.]. She did psychological assessments on both girls. She testified that she sees the boys every other week, although she would prefer to see them weekly but is not able to due to financial costs. Both boys have diagnosis of autism spectrum and have made progress since she started initially seeing them. Specifically, [D.A.M.] has the following diagnoses: autism spectrum disorder-moderate, other specified trauma and stressor with persistent complex bereavement disorder, disruptive mood regulation, excoriation disorder (skin

6

picking with permanent scaring on his face and licking around his mouth). [D.B.M.] has diagnoses of autism spectrum disorder - moderate (high functioning and in gifted program), ADHD hyper-impulsive type, disruptive mood dysregulation disorder, other specified trauma and stressor related disorder with persistent complex bereavement disorder due to the abandonment of his mother.

The boys require an adult with them at school at all times something that Dr. Post has never seen with children their age. They can never be left alone unsupervised due to their need for substantial intervention on social issues. [D.A.M.] has made inappropriate statements to a girl resulting in her parents filing a restraining order against him twice. Both boys have had suicidal ideations by wanting to jump off a balcony or wanting to hang himself on a ceiling fan.

Dr. Post further indicated that the children are definitely in need of the caregiver, Jessica, who is currently caring for them after school and during the summer. Jessica provides transportation to appointments, as well as receives instructions on life kill [sic] teachings and works to implement those strategies with the children. She explains that the care provided to the children is on the level of a behavioral interventionist and if that type of person was hired, they would charge much more than Jessica does to care for the children. Jessica is not like a babysitter or housekeeper. She provides a high level of care for the children, which is not optional for them.

Dr. Post further explained the effect of Susana's removal of herself from the children's lives and what it has done to them. [D.B.M.] thinks that she would not have left them if he had not made up the story about being locked in the attic that he told for allegiance to her. [D.A.M.] believes that she abandoned them. He stood up to his dad for her and she did not love him enough to stay in contact. So[,] he believes that she died because he does not believe that she would not contact him. Susana's abandonment of the children has been the most traumatic thing that has happened to them in their life and they have a trauma based diagnosis because of it.

There is no question in this Court's mind that these children need the special childcare they are receiving. Accordingly, the Court has included the approximate cost of the caregiver in 2018 in the calculations for 2019. In addition, the Court finds that due to extra medical expenses incurred by these children it is prudent to include an average into the child support calculations. The Court did not include the child care expenses and medical expenses in the calculations for 2017 and 2018. Since these expenses have already occurred, the Court believes that it would be easier to total these separately from child support and have Susana pay any outstanding amounts from her portion of the community property which is set to be partitioned when the trial continues. At the end of 2019, and each year thereafter, Ross

shall prepare a spreadsheet calculation on the children's medical and child care expenses incurred for the year and forward, with supporting documentation, to Susana so that she can pay the difference if the total is higher than collected through the year or Ross can reimburse Susana if she has overpaid medical and child care expenses for the year.

Susana's Employment

Susana maintains that she is not able to work full time due to mental health issues. The Court will note that there were not any medical records appropriately introduced at trial indicating that Susana is unable to work full time as an engineer as she has done in the past. Susana testified that she did not have a doctor expert regarding her disability because the Court does not allow anyone from out of state which is incorrect. There was evidence introduced that Susana was on short term disability at the end of 2017. Accordingly, the Court utilized that income provided by Susana's W-2 for the 2017 year even though it was below her earning ability.

For the year 2018 and 2019, the Court has no evidence, other than Susana's testimony, that she was not able to work full-time. She qualified for short term disability in 2017, but has worked part-time in 2018 and 2019. If she was on long term disability and had documentation of being approved for long term disability, the Court could consider that documentation. In addition, the children could possibly receive a disability check due to her disability significantly reducing her child support obligation. However, Susana testified that she does not want to do that. She said she worked too hard for her degree. Susana's only solution to her situation was that she could stay home and take care of the children. However, Susana has not seen the children in years and has not pursued the necessary steps set forth in previous opinions to start seeing the children. Her other solution is for the Court to consider all her costs of living in Houston so she would not have to pay so much child support to Ross. Susanna [sic] made the decision to move to Houston. However, the Court does not find it appropriate to reduce Susanna's [sic] child support obligation given the significant special needs of all four of her children. The Court cannot ignore their needs. Further, Ross should not have to bare [sic] the expenses alone.

For the reasons set forth above, the Court finds that Susana has not presented sufficient evidence of a disability and inability to work, or a valid reason for deviating from the standard child support chart. The Court has used the average of her income in 2014, 2015 and 2016, when she was working full-time, to establish an income that Susanna [sic] should be able to make as an engineer working full time in calculating her child support obligation for the years of 2018 and 2019. Accordingly, the Court sets Susana's monthly child support obligation as follows: 2016 = $1,380; 2017 = $1,227; 2018 = $1,327;

and 2019 = $2,792. Child support payments will be due 1/2 on the first of each month and 1/2 on the 15th of each month.

We find that the testimony and evidence presented at trial supports the trial court's finding that Susana failed to prove a disability and inability to work, or a valid reason for deviating from the standard child support chart. This is especially true considering the fact that Susana failed to submit any medical records to support her claim that her mental and physical infirmities keep her from being employed full time. Consequently, we find that the trial court properly "used the average of her income in 2014, 2015, and 2016, when she was working full-time, to establish an income that Susanna [sic] should be able to make as an engineer working full time in calculating her child support obligation for the years of 2018 and 2019."

Accordingly, we hereby affirm the April 30, 2019 judgment of the trial court that ordered Susana to pay child support as follows: 2016 = $1,380.00; 2017 = $1,227.00; 2018 = $1,327.00; and 2019 = $2,792.00. All costs of this appeal are assessed against Susana.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.