STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2020 CA 1171

STATE OF LOUISIANA IN THE INTEREST OF:
BEJAE MICHELLI

VERSUS

JOSHUA MICHELLI

*Judgment Rendered:* **APR 1 6 2021**

* * * * * * * *

Appealed from the
21st Judicial District Court
In and for the Parish of Tangipahoa
State of Louisiana
Case No. 2008-0002000

The Honorable Jeffery T. Oglesbee, Judge Presiding

* * * * * * * *

Mark Alan Jolissaint
Slidell, Louisiana

Counsel for Plaintiffs/Appellants
Don and Terry Daigrepont, Joint
Administrators of the Succession of
Bejae Daigrepont Michelli

Jenel Guidry Secrease
Ponchatoula, Louisiana

Counsel for Defendant/Appellee
Joshua Michelli

* * * * * * * *

BEFORE: THERIOT, WOLFE, AND HESTER, JJ.

**THERIOT, J.**

Terry Daigrepont and Don Daigrepont appeal the July 9, 2020 judgment of the Twenty-First Judicial District Court, which granted Joshua Michelli's motion for new trial on the merits, vacated a previous judgment, and denied Terry Daigrepont and Don Daigrepont's rule to make past due child support executory and for contempt. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Joshua Michelli and Bejae[1] Daigrepont Michelli were married on May 9, 2003, in St. Tammany Parish, Louisiana. Thereafter, Joshua and Bejae lived in Tangipahoa Parish, Louisiana. Joshua and Bejae had one child, J.M., born on January 7, 2004. Bejae subsequently filed for divorce. In conjunction with the divorce proceedings, Joshua and Bejae entered into a consent judgment in which the parties stipulated that they would share joint custody of J.M. and that Bejae would be the domiciliary parent.

In a joint stipulation signed on November 9, 2005, Joshua and Bejae stipulated that Joshua would pay Bejae $400.00 per month in child support. In doing so, Joshua and Bejae acknowledged that the $400.00 amount was a deviation from the child support guidelines and was made without prejudice to either party. Beginning in November 2005, Joshua paid $400.00 in monthly child support.

On June 23, 2008, the State of Louisiana, Department of Social Services ("the Department") filed a rule to show cause, asserting that Bejae had applied for Child Support Enforcement Services from the State of Louisiana. The Department sought to have Joshua ordered to provide child support for J.M., payable as directed by the Department, as well as medical coverage for the child. On August

---

[1] Bejae's name is occasionally spelled "Bajae" in these proceedings. For consistency, we will refer to her as Bejae.

21, 2008, Joshua and Bejae signed a consent judgment which raised Joshua's monthly child support payments from $400.00 to $629.04.[2]

On March 16, 2009, Bejae filed a motion and order to dismiss the case with child support enforcement. On March 23, 2009, the Department filed a motion to amend judgment, seeking to have the August 2008 judgment amended by dismissing payments through support enforcement services and reverting all payments back to Bejae, the custodial parent.[3]

Joshua alleges that he had difficulty paying the increased amount of child support. Joshua testified that when he explained to Bejae that he was struggling to pay the new amount, she agreed that he could instead pay off a school loan taken out so that J.M. could attend private school. Joshua submitted as evidence an email sent from Bejae on May 26, 2009, which stated the following:

> I will not take you back to court for more child support. The money that you are paying for J.M.'s school loan through First Guaranty Bank will suffice as child support. Let my typed name below serve as my signature.

> Bejae Michelli

Following the email, Joshua paid J.M.'s school loan for the school years 2009-10, 2010-11, and 2011-12. Thereafter, Joshua reverted back to paying $400.00 per month in child support. Joshua testified that he also paid for J.M.'s extracurricular activities during this time frame.

Bejae died unexpectedly on January 27, 2018. Her parents, Terry Daigrepont and Don Daigrepont (collectively, "the Daigreponts") were appointed joint administrators of her succession. On January 4, 2019, the Daigreponts filed a rule to make past due child support executory and for contempt. The Daigreponts

---

[2] The Daigreponts allege that the increase in child support was done pursuant to a rule to modify child support filed by Bejae, but it is unclear from the record when this rule was filed.

[3] Joshua alleged that he was never served with this document. He testified that he received a letter from the Department, dated October 20, 2012, informing him that the State of Louisiana had closed his child support case with Bejae and that the Department would no longer pursue the court order for child and/or medical support. The letter further stated that Joshua was not relieved from paying child support or providing health insurance for J.C., and instructed him to contact Bejae or an attorney to determine what actions should be taken in the future.

asserted that, on August 21, 2008, Joshua had been ordered to pay to Bejae child support in the amount of $629.04 per month. The Daigreponts alleged that Joshua had failed to pay his full child support obligation since that time and asked that all outstanding amounts owed by Joshua through the date of trial be accrued and made executory in a money judgment in their favor.

On September 19, 2019, the trial court signed a judgment finding Joshua to be indebted to Bejae's succession for past due child support in the full sum of $24,557.33, plus legal interest, and attorney's fees in the amount of $2,500.00. On September 27, 2019, Joshua filed a motion for new trial on the merits. Joshua asserted that there was new evidence, which was not available when the matter was first heard. A hearing on the matter was heard on February 6, 2020.

On July 9, 2020, the trial court signed a judgment granting Joshua's motion for new trial on the merits, vacating the September 19, 2019 judgment, and denying the Daigreponts' rule to make past due child support executory and for contempt. In its reasons for judgment, the trial court found that, following the payment of the child's tuition, Joshua and Bejae agreed to resume the $400.00 per month payments that Joshua had previously been ordered to pay in the 2005 joint stipulation of the parties. The trial court also pointed out that Joshua had made additional payments. Considering that Bejae had not filed any additional pleadings for contempt, nor did she resume collection of the payments through child support enforcement services, the trial court concluded that Joshua had met his burden of clearly proving that he and Bejae had an extrajudicial agreement to modify his child support obligation of $629.04 per month.

The Daigreponts appeal, seeking to have the July 9, 2020 judgment reversed and a judgment granted in their favor and against Joshua in the amount of $21,017.03 plus reasonable attorney's fees and costs.[4]

## ASSIGNMENTS OF ERROR

The Daigreponts assign the following as error:

(1) The trial court erred in holding that Joshua and Bejae had reached a clear and specific agreement to modify Joshua's child support obligation.

(2) The trial court erred in holding that the purported agreement entered into by Joshua and Bejae could be enforced without first determining that it was in the child's best interest.

## STANDARD OF REVIEW

The standard of review in a child support case is manifest error and, accordingly, an appellate court will not disturb a child support order unless there is an abuse of discretion or manifest error. *State ex rel. Dept. of Children and Family Services v. Peters*, 2014-1800 (La. App. 1 Cir. 6/5/15); 174 So.3d 1200, 1202.

## DISCUSSION

<u>Assignment of Error #1</u>

The Daigreponts first argue that the trial court erred in holding that Joshua and Bejae had reached a clear and specific agreement to modify Joshua's child support obligation. The Daigreponts assert that, aside from Joshua's testimony, there is no clear and specific evidence from Bejae that she ever consented to receiving only $400.00 per month in child support payments once the school loan was paid.

In Louisiana, the general rule is that a child support judgment remains in full force until the party ordered to pay support has the judgment modified, reduced, or terminated by a court. *Beck v. Cox*, 2014-0256 (La. App. 1 Cir. 9/25/14); 2014 WL 4783404, at *2 (unpublished). However, our courts have recognized that a

---

[4] The parties stipulated at trial that Joshua would owe an arrearage of $21,017.03 if there was no valid extrajudicial agreement.

5

judgment awarding child support can be extrajudicially modified by agreement of the parties. *Beck*, 2014 WL 4783404 at *2; see also *State v. Burton*, 2013-0193 (La. App. 1 Cir. 12/18/13); 2013 WL 6700361, at *4; *Palmer v. Palmer*, 95-0608 (La. App. 1 Cir. 11/9/95); 665 So.2d 48, 50-51; *Dubroc v. Dubroc*, 388 So.2d 377, 380 (La. 1980). Such an agreement must meet the requisites of a conventional obligation and the evidence must establish that the parties have clearly agreed to waive or otherwise modify the court-ordered payments. Furthermore, the agreement must foster the continued support and upbringing of the child; it must not interrupt the child's maintenance or upbringing, or otherwise work to his detriment. *Dubroc*, 388 So.2d at 380. The party seeking to modify the obligation under the judgment has the burden of proving the existence of such an agreement. *Beck*, 2014 WL 4783404 at *2.

Joshua testified that, after his child support obligation was increased, he struggled to pay the increased amount. He testified that he and Bejae came to the agreement regarding the school loan. Following Bejae's email regarding the school loan, Joshua paid for J.M.'s school loan for three years. After he finished paying the school loan, Joshua paid Bejae $400.00 each month in child support.[5] Joshua testified that when Bejae asked for extra money, he gave it to her. He also contributed to J.M.'s extracurricular activities. According to Joshua, he and Bejae also agreed that Bejae would claim J.M. on her taxes.[6]

Joshua testified that from 2009 until her death on January 27, 2018, Bejae never filed a rule for contempt or any other pleading to modify his child support obligation. Joshua further testified that he believed that they had their own

---

[5] According to Joshua, the only lapse in child support payments from 2012 until January 2018 occurred when he was deployed. He testified that, when he returned from his deployment, he wrote Bejae a check for the entire time that he missed. Joshua also testified that during one summer, he had custody of the child every other week, which was a deviation from the usual amount of time he had J.M. During that two month period, Joshua only paid $300.00 in child support. Aside from his deployment and the summer during which he had increased visitation, he always paid the same amount.

[6] Bejae claimed J.M. on her taxes from 2012 until she passed away in January 2018. Prior to 2012, she and Joshua alternated each year.

agreement and that he and Bejae had multiple conversations about it. During this same time period, Joshua's custody schedule also fluctuated due to various agreements made between Bejae and himself.

In written reasons, the trial court wrote the following:

> Based upon the testimony presented and the additional evidence submitted which was not available to the hearing officer, this Honorable Court finds that Mr. Michelli has met his burden of clearly proving that he and Bejae had an extrajudicial agreement to modify his child support obligation of $629.04 per month.

Considering the evidence and testimony presented at the February 6, 2020 hearing, we cannot find that the trial court abused its discretion. The May 26, 2009 email from Bejae supports Joshua's contention that the parties extrajudicially agreed to modify the August 21, 2008 consent judgment. Joshua established that for the 2009-10, 2010-11, and 2011-12 school years, he made payments towards a school loan taken out to pay for J.M.'s private school tuition. Joshua resumed paying $400.00 per month in child support from 2012 until Bejae's passing in 2018, except for during his deployment (when he paid her a lump sum upon his return) and one summer when he had the child for longer periods than usual. Bejae never brought Joshua to court to seek an increase in the amounts paid. Thus, we find that the trial court was not manifestly erroneous in determining that Joshua proved that he and Bejae had an extrajudicial agreement to modify his child support obligation. See _State ex rel. Dept. of Children and Family Services_, 174 So.3d at 1202. This assignment of error lacks merit.

Assignment of Error #2

In their second assignment of error, the Daigreponts argue that the trial court erred in holding that the extrajudicial agreement was enforceable without first determining whether the agreement was in the child's best interest. As previously stated, an extrajudicial agreement must foster the continued support and upbringing

of the child and must not interrupt the child's maintenance or upbringing, or otherwise work to his detriment.  See *Beck*, 2014 WL 4783404 at *2.

From the record, there is no indication that J.M.'s maintenance or upbringing was interrupted.  Joshua testified that he provided Bejae with extra money when asked and that he contributed to J.M.'s extracurricular activities.  He further testified that he did not notice any difference in J.M.'s quality of life when he was paying the increased amount.  There is nothing in the record to refute this testimony.  Thus, the record before us does not contain any evidence that the extrajudicial agreement caused any detriment to J.M.  This assignment of error lacks merit.

## DECREE

For the above and foregoing reasons, the July 9, 2020 judgment of the Twenty-First Judicial District Court is affirmed.  Costs are assessed to Appellants, Terry Daigrepont and Don Daigrepont.

**AFFIRMED.**