WELCH, J.
|2M.P.W. appeals a judgment granting a summary judgment and dismissing his petition to annul a stipulated judgment that he previously entered into with his ex-wife, L.P.W.[1] Finding no error in the judgment of the trial court, we affirm.
FACTUAL AND PROCEDURAL HISTORY
L.P.W. and M.P.W. entered into a covenant marriage on May 4, 2004. On April 19, 2010, M.P.W. filed a petition seeking a separation from bed and board and a divorce. During the parties’ marriage, they had two children: S.J.W., who was born on October 2, 2008,[2] and A.E.W., who was born on October 18, 2010. L.P.W. was pregnant with A.E.W. when the separation and divorce proceedings were commenced, and she gave birth to the child before the judgment of divorce was granted.
In M.P.W.’s petition, he sought, among other things, that he be awarded sole custody of S.J.W. and child support. L.P.W. responded by filing an answer and recon-ventional demand, seeking that the parties be awarded joint custody of S.J.W., that she be designated as the child’s domiciliary parent, subject to reasonable visitation by M.P.W., and that she be awarded child support and interim and periodic spousal support.
On May 10, 2010,[3] the parties entered into a stipulated judgment that, among other things, awarded the parties joint custody of S.J.W., designated L.P.W. as the child’s domiciliary parent, and set forth a specific physical custodial schedule. The stipulated judgment also provided that each party had the right of first refusal to | ^provide care for S.J.W. in the absence of the other parent (other than for daycare or school). In addition, the stipulated judgment provided that pending further orders of the court, each party would be responsible for the payment of one-half of the daycare expenses for S.J.W., one-half of the health insurance premium for S.J.W., and one-half of the out-of-pocket medical, dental and other health care expenses for S.J.W. and for the pregnancy of L.P.W. Additionally, the stipulated judgment provided that the claims of each party for the payment of child support were reserved for hearing at a future date, with a reservation of any award rendered retroactive to the date of judicial demand.
On October 8, 2011, almost a year after A.E.W.’s birth, M.P.W. filed a petition seeking to disavow paternity of A.E.W. On November 29, 2011, the trial court signed a judgment of divorce, and a trial on the merits of all pending issues was scheduled for January 28, 2012. On that date, the parties entered into a stipulated judgment that: (1) dismissed M.P.W.’s petition to disavow paternity of A.E.W.;[4] (2) termi *42 nated the custody and visitation rights of M.P.W. as to both S.J.W. and A.E.W. and awarded sole custody of both children to L.P.W.; (3) provided M.P.W. would promptly execute all documents necessary to effect the voluntary surrender of his parental rights to the minor children so as to free them for adoption; (4) enjoined M.P.W. from contacting L.P.W. or the minor children; (5) provided L.P.W. would relinquish any claims for support for herself or the minor children from M.P.W. (both past and future) and that she would waive and release her pending claim for support, contribution toward daycare, medical insurance, and medical expenses for either minor child or herself; (6) dismissed L.P.W.’s pending rule for contempt; and (7) partitioned L.PW.’s community | property and settled their claims between each other that arose from their matrimonial regime.
M.P.W. never executed a valid surrender of his parental rights, as set forth in the stipulated judgment. See In the Matter of B.L.M. Applying for Intrafamily Adoption of S.J.W. and A.E.W., 2013-0448, pp. 2-3 (La.App. 1st Cir. 11/1/13), 136 So.3d 5, 6-7, 2013 WL 5872022. Instead, on June 22, 2012, he filed a petition to annul the January 23, 2012 stipulated judgment. In this petition, M.P.W. asserted that the provision in the stipulated judgment that “require[d him] to surrender his parental rights and sign a [v]olun-tary [a]ct of [surrender [was] an absolute nullity in that at the time of the execution of said [j]udgment[,] there was no adoption proceeding pending and therefore!,] no ability to execute a valid surrender as there was no proceeding in which to file the surrender into[,] which is a statutory requirement associated with the signing of a surrender.” In the petition, M.P.W. also asserted that the judgment was null because it was obtained by “ill practices [that] constituted a deprivation of the legal rights of [M.P.W.] to adequately prepare for the [c]ourt hearing and further!,] that the enforcement of the judgment would be inequitable and unjust.”
Specifically, M.P.W. claimed that the judgment should be annulled because: (1) immediately prior to the January 23, 2012 judgment, he shared custody of S.J.W.; (2) although there was a pending rule for contempt regarding the payment of support and other financial sums and questions related to the right of first refusal provision, there were no allegations as to inadequate parenting and no pending action seeking to modify custody; (3) although he ultimately consented to the entry of the judgment on January 23, 2012, the terms of that judgment “lead to an unconscionable result and he had no idea going into [c]ourt that he would be asked to forfeit his rights of custody as to his minor children”; and (4) the judgment contained provisions that resulted in a complete resolution of the community | .^property between the parties despite the fact that no action to partition property had been filed and there is nothing in the record that supports the reasonableness of the partition. Accordingly, M.P.W. requested that the January 23, 2012 judgment be annulled in its entirety, or alternatively, that those provisions of the judgment that “serve as a termination of his parental rights” and required him to sign a voluntary act of surrender for the minor children be rendered null and void.[5]
*43 On October 15, 2012, L.P.W. filed a motion for summary judgment seeking the dismissal of the petition to nullify the January 23, 2012 stipulated judgment.[6] By judgment signed on November 2, 2012, the trial court granted L.P.W.’s motion for summary judgment and dismissed M.P.W.’s petition to annul the January 23, 2012 stipulated judgment with prejudice, and it is from this judgment that M.P.W. now appeals.
LAW AND DISCUSSION

Summary Judgment Law

A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine issue of material fact, and the summary judgment procedure is favored and designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2); Power Marketing Direct, Inc. v. Foster, 2005-2023 (La.9/6/06), 938 So.2d 662, 668. A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, if any, show |6that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. Id.; La. C.C.P. art. 966(B)(2).
The mover has the burden of proof that he is entitled to summary judgment. See La. C.C.P. art. 966(C)(2). If the mover will not bear the burden of proof at trial on the subject matter of the motion, he need only demonstrate the absence of factual support for one or more essential elements of his opponent’s claim, action or defense. Id. If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense, then the non-moving party must produce factual support sufficient to satisfy his evi-dentiary burden at trial. Id. If the mover has put forth supporting proof through affidavits or otherwise, the adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. La. C.C.P. art. 967(B).
Summary judgments are reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court’s determination of whether summary judgment is appropriate: whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. Power Marketing Direct, Inc., 938 So.2d at 669. Therefore, in the present case, our de novo review will examine whether there are any genuine issues of material fact and whether L.P.W. was entitled to judgment as a matter of law.

The January 23, 2012 Judgment

Initially, we note that the January 23, 2012 judgment is a stipulated judgment. A consent or a stipulated judgment is a bilateral contract by which the parties adjust their differences by mutual consent, with each party balancing his hope of gain against his fear of loss. Leonard v. Reeves, 2011-1009 (La.App. 1st Cir. *44 1/12/12), 82 So.3d 1250, 1261; see also La. C.C. arts. 3071 and 3072. Its binding 17force arises from the voluntary acquiescence of the parties rather than the adjudication by the court. Id.
Generally, there is no right to appeal a stipulated or consent judgment. See Mill Creek Homeowners Association, Inc. v. Manuel, 2004-1385 (La.App. 1st Cir. 6/10/05), 916 So.2d 268, 270. That is because “[a]n appeal cannot be taken by a party who confessed judgment in the proceedings in the trial court or who voluntarily and unconditionally acquiesced in a judgment rendered against him.” La. C.C.P. art.2085. Thus, in this case, as between M.P.W. and L.P.W., the January 23, 2012 stipulated judgment was a final judgment and was not appealable. See Guidry v. Sothern, 98-1152 (La.App. 1st Cir. 5/14/99), 734 So.2d 928, 930-931.

Nullity of Judgments

The only remedy available to a party seeking to set aside a final judgment is an action in nullity. Guidry, 734 So.2d at 930. The nullity of a final judgment may be demanded for vices of either form or substance. La. C.C.P. art.2001. Louisiana Code of Civil Procedure article 2002 lists specific vices of form that render a judgment absolutely null, and it provides, in pertinent part that “[a] final judgment shall be annulled if it is rendered: (1) [ajgainst an incompetent person not represented as required by law[;j (2) [ajgainst a defendant who has not been served with process as required by law and who has not waived objection to jurisdiction, or against whom a valid judgment by default has not been taken[;j and (3) [bjy a court which does not have jurisdiction over the subject matter of the suit.” The grounds for absolute nullity based on vices of form listed in La. C.C.P. art.2002 are exclusive. Hebert v. Hebert, 96-2155 (La.App. 1st Cir. 9/19/97), 700 So.2d 958, 959.
With regard to vices of substance, the jurisprudence of our state recognizes that a judgment may also be absolutely null or void ab initio if it contains a | ¿‘condition that is contra bonos mores.” Id.; see also La. C.C. arts.2030 and 3082. Additionally, Louisiana Code of Civil Procedure article 2004 provides that “[a] final judgment obtained by fraud or ill practices may be annulled.” Our jurisprudence outlines two criteria for this determination: (1) when the circumstances under which the judgment was rendered show the deprivation of the legal rights of the litigant who seeks relief, and (2) when enforcement of the judgment would be unconscionable and inequitable. Belle Pass Terminal, Inc. v. Jolin, Inc., 2001-0149 (La.10/16/01), 800 So.2d 762, 766.
The legal right of which a litigant must be deprived to have a judgment annulled includes as the right to appear and assert a defense and the right to a fair and impartial trial. Id. Not every fraud or ill practice constitutes grounds to annul a judgment. Ward v. Pennington, 523 So.2d 1286, 1289 (La.1988). There must be a causal relationship between fraud or ill practice and obtaining of the judgment. Id. The party seeking annulment of a judgment must demonstrate how he was prevented or excused from asserting any defenses he may have had, i.e., that he was deprived of the knowledge of the knowledge of the existence of the defense relied on, or of the opportunity to present it, by some fraud or ill practice on the part of the other party. State, Through Department of Health and Human Res., Office of Family Sec., In Interest of Brown v. Beauchamp, 473 So.2d 323, 327 (La.App. 1st Cir.), unit denied, 477 So.2d 1125 (La.1985).
*45 Additionally, a stipulated judgment (as opposed to other final judgments rendered against a party without their consent), being a bilateral contract, may also be annulled pursuant to La. C.C. art. 1948 for vices of consent, ie.: (1) error of fact or of the principal cause of the agreement (La. C.C. arts.1949, 1950, and 1967); (2) fraud (La. C.C. arts.1953 and 1955); or (3) duress (La.C.C. art.1959). See also La. C.C. art. 3082; Stroscher v. Stroscher, 2001-2769 (La.App. 1st Cir. 2/14/2003), 845 So.2d 518, 524; Leonard, 82 So.3d at 1261; Baker v. Baker, 2012-0911, p. 7 (La.App. 1st Cir. 4/26/13), 2013 WL 1791077 (unpublished ), writ denied, 2013-1218 (La.9/13/13), 122 So.3d 545; City of Baton Rouge v. Douglas, 2007-1153 (La.App. 1st Cir. 2/8/08), 984 So.2d 746, 749, writ denied, 2008-0939 (La.6/20/08), 983 So.2d 1284; and Hoover v. Boucvalt, 99-0867 (La.App. 4th Cir. 11/24/99), 747 So.2d 1227, 1230, writ denied, 99-3610 (La.2/18/00), 754 So.2d 969.
Consent is vitiated when it has been obtained by duress of such a nature as to cause a reasonable fear of unjust and considerable injury to a party’s person, property, or reputation. La. C.C. art.1959. Consent is vitiated even when duress has been exerted by a third person. La. C.C. art.1961. Generally, as in the present case, “duress” means “a threat of harm made to compel a person to do something against his or her will or judgment” or more specifically, “a wrongful threat made by one person to compel a manifestation of seeking assent by another person to a transaction without real volition.” Leonard, 82 So.3d at 1261, citing Black’s Law Dictionary 542 (8th ed.2004). (Emphasis added). “Duress of imprisonment” is defined as “[t]he wrongful confining of a person to force the person to do something.” Id. (Emphasis added.); see also La. C.C. art.1959, comment (b).

The Evidence on the Motion for Summary Judgment

In L.P.W.’s motion for summary judgment, she claimed that the allegations of M.P.W.’s petition, when taken as a whole, failed to warrant the nullification of the January 23, 2012 stipulated judgment, which was acknowledged under oath, on the record, and in open court by the parties. Essentially, in support of her motion, L.P.W. relied on the transcript of the January 23, 2012 stipulation. The transcript provides, in pertinent part as follows:
[BY COUNSEL FOR L.P.W.]:
The parties have agreed that [M.P.W.] will promptly execute a surrender of parental rights as to both [S.J.W.], whose date of birth is October the 2nd, 2008, and [A.E.W.], whose date of birth is October the 18, 2010.
[inWe are immediately terminating any custodial or visitation rights that he may have as to either child....
[[Image here]]
[M.P.W.] "will be absolved of any responsibility for payment of any of the contributory expenses that were previously ordered by the [c]ourt, any claim for child support, past or future, for either of the children.... In other words, those that he was ordered to pay and didn’t pay.... Those are going to be relinquished, as well as any daycare— future daycare obligations.
[L.P.W.] s going to waive any claims for — she’s going to dismiss her pending rule for contempt and waive any future claims for contempt arising from his failure to abide by prior orders of the [c]ourt....
Both L.P.W. and M.P.W. then swore under oath that they each heard the terms and conditions of the stipulation or agreement, that they each understood those *46 terms and conditions, and that they each agreed to abide by those terms and conditions. The trial court then accepted the stipulation, and then ordered that a written judgment in accordance with that stipulation be prepared. Further, the stipulated judgment signed by the trial court conforms to the stipulation dictated into the record and there is no dispute over the terms of the stipulation dictated on the record and the judgment signed in conformity with that stipulation.
In opposition to the motion for summary judgment, essentially M.P.W. contended that the entire judgment was an absolute nullity because: (1) the provision wherein L.P.W. relinquished her right to child support from M.P.W. was contra bonos mores (against public policy) and (2) the provision that required him to sign a voluntary act of surrender before an adoption proceeding was pending, violated Louisiana law, and therefore, was also against public policy. He also claimed that the judgment was null based on La. C.C.P. art.2004, because it was obtained by fraud or ill practices. Essentially, he claims that is he is being deprived of his legal rights to his children, that the enforcement of the judgment |1Twould be unconscionable, and the judgment encompassed issues that were not pending before the court.
In opposition to the motion for summary judgment, M.P.W. relied on his own affidavit, which provided:
On January 23, 2012[,] I appeared in court on a scheduled rule. My attorney at the time had communicated with me very little about what [was] going on prior to that time. On that day[,] my attorney conferred with me a number of times and advised me of new contempt charges for failing to comply with prior court orders. He told me that opposing counsel would likely see me face jail time for contempt unless I was willing to surrender the rights to both of my children, free them for adoption, agree to an injunction, agree to a resolution of the community property with me keeping only what was in my possession and giving to [L.P.W.] everything else, including all equity in the house. I was told that the disparity in the property would cover my past child support and they would not pursue contempt charges, relieving me of the likelihood of going to jail, but at the same time forever severing myself from the lives of [L.P.W.] and my two children!, S.J.W. and A.E.WJ. I was unable to comprehend all that was taking place on this day as I had no idea that custody, much less the termination of the rights to my children would be an issue. On that day, I was under extreme duress brought about by the likelihood of being incarcerated; a threat to my personal freedom, and this caused a brief lapse in self-control, and so I agreed to anything and everything. I ultimately signed the judgment that was drawn up following the January 23, 2012 court appearance because I was told that I had no choice but to do so since that was the judgment, or order of the court, entered in open court. Once I was able to absorb all that transpired, and after seeing a counselor to cope with the possible loss of my children, I felt that I would rather go to jail then give up the rights to my children and I feel that way today.

Absolute Nullity

In this case, there is nothing in the record to suggest that there were any vices of form that would render the January 23, 2012 stipulated judgment absolutely null as set forth in La. C.C.P. art.2002. With regard to whether the January 23, 2012 stipulated judgment is an absolute nullity for vices of substance, since the material facts with regard to these issues *47 are not in dispute, we look solely to the legal question presented by the motion for summary judgment, i.e., whether the provisions wherein L.P.W. agreed to relinquish her claim for child support against M.P.W. and wherein M.P.W. agreed to sign a voluntary act of |12surrender and free the children for adoption proceedings were against public policy, and therefore, absolutely null as a matter of law. See Power Marketing Direct, Inc., 938 So.2d at 669.[7]
Parents have a legal duty to provide support to their children. Dubroc v. Dubroc, 388 So.2d 377, 380 (La.1980). This duty cannot be ' permanently renounced or suspended. Id. Thus, the courts of our state have long recognized that a judgment wherein a parent is permanently relieved of his obligation to support his minor children is an absolute nullity because it contravenes the public policy of this state. Hebert, 700 So.2d at 960; see also Walder v. Walder, 159 La. 231, 105 So. 300 (1925); Dubroc, 388 So.2d at 380; Pierce v. Pierce, 397 So.2d 62, 64 (La.App. 2nd Cir.1981); Richardson v. Richardson, 427 So.2d 518, 520 (La.App. 3rd Cir.), writ denied, 433 So.2d 182 (La.1983); Macaluso v. Macaluso, 509 So.2d 201, 202-203 (La.App. 1st Cir.1987). The public policy behind a parent’s duty of support is to ensure, both for the sake of the child and the sake of the general public that might otherwise have to provide his support, that each child receives support sufficient for his maintenance and upbringing. Macaluso; 509 So.2d at 202. Nevertheless, the parents of a child may mutually agree to modify a support judgment in certain respects; however, in order for such an agreement to be enforceable, it must be in the child’s best interest and must not interrupt his maintenance and upbringing. Id.
In this case, child support was never set. According to the May 10, 2010 stipulated judgment, both L.P.W. and M.P.W. agreed that they would each be responsible for the payment of one-half of the daycare expenses for S.J.W., one-half of the health insurance premium for S.J.W., and one-half of the out-of-pocket medical, dental and other health care expenses for S.J.W., and that their claims for |13child support were reserved for hearing at a future date.[8] According to the January 23, 2012 stipulated judgment, L.P.W. relinquished any claims she had for the support of the minor children — both past and future— from M.P.W. and she waived and released her pending claim for M.P.W.’s failure to contribute toward the daycare, medical insurance, and medical expenses for either child or herself.
Although this agreement may appear to permanently relieve M.P.W. of his obligation to support his children, we note that this agreement was in conjunction with another agreement that M.P.W.’s custodial and visitation rights would be terminated and that M.P.W. would promptly execute a voluntary act of surrender of his parental rights to the minor children so as to free them for adoption.[9] *48 The execution of a voluntary act of surrender of parental rights and the subsequent adoption of a child effectually terminates the parental rights and obligations of the surrendering parent, including the surrendering parent’s obligation to support the child, and the adopting parent becomes the parent of the child for all purposes. See La. C.C. arts. 199 and 227; and La. Ch.C. arts. 1101, 1123, and 1193. Therefore, we do not find that the agreement that L.P.W. would relinquish her claim for child support against M.P.W., together with the agreement that M.P.W. would execute a voluntary surrender of his parental rights so that the children could be adopted, violates the public policy of this state, because the adopting parent would be assuming the legal obligation to financially support the children.[10] Accordingly, | uwe find no merit to M.P.W.’s claim that this provision of the January 23, 2012 stipulated judgment is an absolute nullity.
We likewise find no merit to M.P.W.’s contention that the provision in the January 23, 2012 stipulated judgment wherein he agreed to sign a voluntary act of surrender before an adoption proceeding was pending was against public policy. M.P.W. essentially argues that the requirements set forth in La. Ch.C. art. 1122(A)(4) and (5)[11] for a voluntary act of surrender could not be met at the time of the January 23, 2012 stipulated judgment because there was no adoption proceeding pending, there was no court in which to file the surrender, and no ability to provide the name and address of the individual or agency to whom the surrender was being made. Therefore, he claims that, at the time of the January 23, 2012 stipulated judgment, it was impossible to have a valid act of surrender, and thus, any agreement that he execute such a surrender at the time the stipulated judgment was entered into, was a violation of Louisiana law and against public policy.
Notably, deficiencies in or the inadequacy of a voluntary act of surrender executed under La. Ch.C. art. 1122 only renders the surrender invalid. See In Re C.A.P., 573 So.2d 214, 216 (La.App. 1st Cir.), writs denied, 566 So.2d 964 (La.1990).[12] Such deficiencies do not render the surrender unlawful,[13] Therefore, we *49 11scannot say that this provision of the January 23, 2012 stipulated judgment was against public policy. See La. C.C. art. 2030.
Furthermore, the January 23, 2012 stipulated judgment and the transcript of the stipulation indicate an agreement that M.P.W. would “promptly” execute all documents necessary to effect the voluntary surrender of his parental rights to the minor children so that the children could be adopted; the judgment did not require him to execute a surrender at the same time the stipulated judgment was entered into or otherwise before an adoption proceeding was commenced. Interestingly, M.P.W. never executed a valid voluntary act of surrender, and L.P.W. never sought to enforce this provision of the January 23, 2012 stipulated judgment, as a final decree of adoption of the minor children was ultimately rendered without M.P.W.’s consent pursuant to La. Ch.C. art. 1245(C)(2). See In the Matter of B.L.M. Applying for Intrafamily Adoption of S.J.W. and A.E.W., 2013-0448 (La.App. 1st Cir. 11/1/13), 136 So.3d 5, 2013 WL 5872022.
Accordingly, we find that the provisions of the January 23, 2012 stipulated judgment, wherein L.P.W. relinquished her claim for child support against M.P.W. with the agreement that M.P.W. would execute a voluntary act of surrender and free the children for adoption, were not against public policy and were not absolutely null. Thus, the trial court properly dismissed those claims.

Relative Nullity and Vices of Consent

With regard to whether the January 23, 2012 stipulated judgment should be nullified as having been obtained by fraud or ill practices, or because of a vice of consent, M.P.W. would bear the burden of proof at trial. Therefore, L.P.W.’s burden on the motion for summary judgment was to point out that there was an absence of factual support for one or more elements essential to M.P.W.’s claim; 1 ^thereafter, M.P.W. was required to produce factual support sufficient to establish that he would be able to satisfy his evidentiary burden of proof at trial. See La. C.C.P. art. 966(C)(2). His failure to do so would mandate granting the motion. See La. C.C.P. art. 966(C)(2)
As previously noted, in support of L.P.W.’s motion for summary judgment, she relied on the January 23, 2012 stipulated judgment and the transcript of that stipulation. The transcript reflects that M.P.W. was represented by counsel when he entered into the January 23, 2012 stipulated judgment and that he knowingly and voluntarily agreed under oath to each of the terms set forth in the January 23, 2012 stipulated judgment. The transcript does not reflect that M.P.W. was deprived of the opportunity to appear or present a defense at the hearing or of any other legal right. Nor does the transcript reflect that there was any fraud or ill practices on the part of any of the parties, the attorneys, or the trial court, which led to the January 23, 2012 judgment. Lastly, the transcript does not reflect that M.P.W. agreed to the terms of the January 23, 2012 stipulated judgment under threat, duress, or coercion, that he had a mistaken belief as to the terms of the agreement, or that his consent to the January 23, 2012 stipulated judgment was vitiated in any way.
As previously noted, the only evidence offered by M.P.W. in opposition to the motion for summary judgment was his own affidavit. Essentially, M.P.W. provides that counsel for L.P.W. wanted him to “face jail time for contempt” unless he was willing to agree to surrender his rights to both of his children and free them for adoption, as well as agree to the other terms of the January 23, 2012 stipulated judgment, and that he was under “extreme *50 duress brought about by the likelihood of being incarcerated.”
However, inherent in the definitions of “duress” and “duress of imprisonment” previously set forth hereinabove, is the element of a lack of legal | ^justification, or wrong, behind the threat or action. If M.P.W. had any real apprehension of incarceration for contempt of court, such apprehension could only have been based upon: (1) the court’s inherent authority to enforce its previous lawful judgments; and/or (2) L.P.W.’s legal right to seek such redress for any proven willful violation of such judgments on M.P.W.’s part. See Leonard, 82 So.3d at 1261. This does not, by definition, constitute duress for purposes of vitiating his consent to the entry of the January 23, 2012 stipulated judgment. Id. A threat of doing a lawful act or a threat of exercising a right does not constitute duress. La. C.C. art. 1962; Leonard, 82 So.3d at 1261-1262.[14]
Furthermore, M.P.W.’s affidavit does not establish that there are any genuine issues of material fact as to any fraud, ill practices, deprivation of a legal right, error, or duress on the part of any of the parties, the attorneys, or the trial court.[15] Rather, this affidavit only establishes that M.P.W. changed his mind after he agreed, in open court and under oath, to the terms of the January 23, 2012 stipulated judgment. Unfortunately for M.P.W., a change of heart is not a valid ground to nullify a stipulated judgment or otherwise rescind a compromise agreement. See City of Baton Rouge, 984 So.2d at 750. And, while M.P.W. obviously feels he made a bad decision to enter into the January 23, 2012 stipulated judgment, it is not the province of the courts to relieve a party of a supposed bad bargain. See City of Baton Rouge, 984 So.2d at 750; River Birch, Inc. v. Robin & Associates, Inc., 2004-1561 (La.App. 1st Cir.6/15/05), 906 So.2d 729, 737, writ denied, 2005-2201 (La.2/10/06), 924 So.2d 176. Accordingly, we conclude that M.P.W. failed to establish that there were any genuine issues of material fact with regard to his claim to nullify the January 23, 2012 stipulated judgment. Thus, the trial court properly granted L.P.W.’s motion for summary judgment and dismissed those claims.
CONCLUSION
For all of the above and foregoing reasons, the November 2, 2012 judgment of the trial court granting L.P.W.’s motion for summary judgment and dismissing M.P.W.’s petition to nullify the January 23, 2012 stipulated judgment is affirmed. All costs of this appeal are assessed to the plaintiff/appellant, M.P.W.
AFFIRMED.

. Due to the confidential nature of an appeal closely related to this appeal also rendered this date, In the Matter of B.L.M. Applying for Intrafamily Adoption of S.J.W. and A.E.W., 2013-0448 (La.App. 1st Cir. 11/1/13), 136 So.3d 5, 2013 WL 5872022, the minor children, their biological parents, and their stepparent are referred to by their initials to preserve their anonymity.

. M.P.W. alleged in his petition that S.J.W.'s date of birth was October 3, 2008; however, that appears to be a mistake as all other pleadings in this matter and the pleadings in In the Matter of BX.M. Applying for Intrafamily Adoption of S.J.W. and A.E.W., 2013-0448 (La.App. 1st Cir. 11/1/13), 136 So.3d 5, 2013 WL 5872022, state that his date of birth was October 2, 2008.

. The stipulated judgment was signed by the trial court on May 14, 2010.

. Apparently, M.P.W. voluntarily agreed to dismiss the petition to disavow paternity after he received the results of a paternity test.

. After M.P.W. filed the petition to annul the January 23, 2012 stipulated judgment, B.L.M., L.P.W.’s current husband and stepfather to the two minor children, filed a petition for intrafamily adoption. The juvenile court subsequently granted the adoption pursuant to La. Ch.C. art. 1245 and M.P.W. appealed. In a decision also rendered this date, *43 In the Matter of B.L.M. Applying for Intrafamily Adoption of S.J.W. and A.E.W., 2013-0448 (La.App. 1st Cir. 11/1/13), 136 So.3d 5, 2013 WL 5872022, this court affirmed the final decree of adoption.

. In response to the petition to annul the January 23, 2012 stipulated judgment, L.P.W. initially filed a dilatory exception raising the objection of improper cumulation of actions and a peremption exception raising the objections of no cause and no right of action. However, according to the trial court minutes, L.P.W. ultimately withdrew the objections.

.See Diamond B Construction Company, Inc. v. City of Plaquemine, 95-1979 (La.App. 1st Cir.4/30/96), 673 So.2d 636, 640 (when a contract is to be interpreted by the court as a matter of law, a motion for summary judgment is a proper procedural vehicle to present the question to the court).

. Since A.E.W. had not yet been bom, this May 10, 2010 stipulated judgment was silent with respect to that child.

. Since a stipulated judgment is a bilateral contract, its provisions must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract in its entirety. See La. C.C. art.2050.

. Although M.P.W. never signed a valid voluntary act of surrender, the minor children were ultimately adopted by their step-father without M.P.W.'s consent pursuant to La. Ch.C. art. 1245(C)(2), and this court affirmed the final decree of adoption. See In the Matter of B.L.M. Applying for Intrafamily Adoption of S.J.W. and A.E.W., 2013-0448 (La.App. 1st Cir. 11/1/13), 136 So.3d 5, 2013 WL 5872022.

. Louisiana Children’s Code article 1122(A) provides, in pertinent part:
Every [a]ct of [s]urrender shall contain the following information:
[[Image here]]
(4) The name and address of the person, agency, or representative to whom the surrender is made.
(5) The court in which the surrender is to be filed as required by [La. Ch.C. art.] 1131.

. We note that In Re C.A.P., 573 So.2d at 216 addressed inadequacies of a voluntary act of surrender executed pursuant to former La. R.S. 9:422.6(A), which provisions are now set forth in La. Ch.C. art. 1122(A). See La. Ch.C. art. 1122, comment b.

. Seefore.g., La. Ch.C. art. 1131(D) (providing that the court can refuse to accept an act of surrender that fails to comply with the legal requirements until the defects in the surrender are remedied).

. Additionally, a party cannot claim duress based on the choice between reaching a compromise agreement and going to trial. Hoover, 747 So.2d at 1231. The expense and uncertainty of trial is the very stuff of which settlements are made. Expense and uncertainty may cause stress and pressure, but they do not constitute legal duress. Without such stress, pressure, expense, and uncertainty, there would be no reason to settle. Id.

. Although M.P.W. argues in his brief that he is being deprived of the legal right to be involved in the lives of his children (even though he voluntarily agreed to relinquish his rights), the legal right of which a litigant must be deprived to have a judgment annulled has includes the right to appear and assert a defense and the right to a fair and impartial trial. See Belle Pass Terminal, Inc., 800 So.2d at 766. M.P.W.’s affidavit in opposition to the motion for summary judgment fails to establish a factual issue as to whether he was deprived of the opportunity to appear and assert a defense at the January 23, 2012 hearing.