WELCH, J.
|2M.P.W., the biological father of the minor children, S.J.W. and A.E.W., appeals a judgment of the juvenile court[1] granting the petition for intrafamily adoption of the minor children, which was filed by the children’s step-father, B.L.M.[2] Finding no error in the judgment of the juvenile court, we affirm.
FACTUAL AND PROCEDURAL HISTORY
L.P.W.[3] and M.P.W. were previously married and during their marriage, they had two-children: S.J.W., who was born on October 2, 2008, and A.E.W., who was *7 born on October 18, 2010.[4] On January 23, 2012, in the divorce proceedings, L.P.W. and M.P.W. entered into a stipulated judgment that, among other things, terminated the custody and visitation rights of M.P.W.; awarded L.P.W. the sole care, custody, and control of the minor children; and enjoined M.P.W. from contacting L.P.W. or the minor children. In addition, M.P.W. agreed to execute all documents necessary to effect the voluntary surrender of his parental rights of the minor children so as to free them for adoption. In exchange, L.P.W. relinquished any claims for support (both past and future) for herself or the minor children from M.P.W. and dismissed her pending rule for contempt against L.P.W. A judgment to this effect was signed on March 6, 2012.
|3On April 14, 2012, L.P.W. married B.L.M. Apparently, M.P.W. had signed the necessary documentation to effect the voluntary surrender of his parental rights of the minor children; however, documentation executed was not in authentic form as required by La. Ch.C. art. 1122. M.P.W. then subsequently refused to execute another act of surrender. Instead, on June 22, 2012, he filed a petition seeking to annul the stipulated judgment.[5]
On July 25, 2012, B.L.M filed a petition for intrafamily adoption of his stepchildren, S.J.W. and A.E.W. L.P.W. joined in the petition. The petition alleged that L.P.W. and B.L.M had married, that they had resided together with the minor children since the time of their marriage, and that the minor children had a loving relationship with B.L.M. The petition also alleged that L.P.W. had been awarded sole custody of the children pursuant to the stipulated judgment, and although M.P.W. previously agreed but subsequently refused to execute a notarized surrender of his parental rights of the children, M.P.W.’s consent to the adoption was not necessary because he had, without just cause, failed to: communicate (or attempt to communicate) with and provide financial support for A.E.W. since his birth (October 18, 2010); communicate (or attempt to communicate) with S.J.W. for a period in excess of six months; and provide financial support for S. J.W. for a period in excess of one year. As such, B.L.M. alleged that it was in the children’s best interest to be adopted by him, as he could provide them with the continuation of a stable and loving home to which they had grown accustomed to, and provide them with reliable financial support and security.[6]
LM.P.W. filed an objection to the petition on September 14, 2012,[7] on the basis that he was precluded from contacting the children by virtue of the January 23, 2012 judgment, which he was seeking to annul, and that it was not in the children’s best *8 interest for the adoption to occur. On October 5, 2012, M.P.W. filed a peremptory exception raising the objection of no right of action arguing that when B.L.M. filed his original petition on July 25, 2012, he had not had legal or physical custody of the children for at least six months prior to filing the petition for adoption, as required by La. Ch.C. art. 1243(3). However, on October 15, 2012, B.L.M. filed a supplemental and amended petition for in-trafamily adoption, which alleged that the children had resided in the home of B.L.M. in excess of six months (as of the date of the supplemental and amended petition) and re-averred all of the allegations of the original petition. Again, M.P.W. filed an objection to this petition on the same basis as the original petition.
After a hearing on November 2, 2012, the juvenile court determined that the consent of M.P.W. to the adoption was not necessary and rendered judgment granting the intrafamily adoption of S.J.W. and A.E.W. by B.L.M.[8] The final decree or judgment of adoption was signed on November 14, 2012, and it is from this judgment that M.P.W. appeals. On appeal, M.P.W. contends that the trial court erred in finding: (1) that his consent to the intrafamily adoption was not necessary and (2) that it was in the best interest of the minor children for the adoption to take place.[9]
I ¿LAW AND DISCUSSION
Among the types of adoption authorized by the Louisiana Children’s Code is the intrafamily adoption, which refers to adoption by a stepparent or certain other relatives of the child. See La. Ch.C. arts. 1170 and 1243. Generally, a parent’s consent is required for an intrafamily adoption. La. Ch.C. art. 1193. However, pursuant to La. Ch.C. art. 1245, consent of a parent is not necessary if the petitioner proves that the parent has forfeited his right to consent as follows:
A. The consent of the parent as required by Article 1193 may be dispensed with upon proof by clear and convincing evidence of the required elements of either Paragraph B or C of this Article at the hearing on the opposition and petition.
B. When a petitioner authorized by Article 1243 has been granted custody of the child by a court of competent jurisdiction and any one of the following conditions exists:
(1) The parent has refused or failed to comply with a court order of support without just cause for a period of at least six months.
(2) The parent has refused or failed to visit, communicate, or attempt to com- *9 munieate with the child without just cause for a period of at least six months. C. When the spouse of a stepparent petitioner has been granted sole or joint custody of the child by a court of competent jurisdiction or is otherwise exercising lawful custody of the child and any one of the following conditions exists:
(1) The other parent has refused or failed to comply with a court order of support without just cause for a period of at least six months.
(2) The other parent has refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of at least six months.
(Emphasis added.)
The party petitioning the court for adoption carries the burden of proving a parent’s consent is not required under the law. In re J.A.B., 2004-1160 (La.App. 1st Cir.9/17/04), 884 So.2d 678, 681, writ denied, 2004-2963 (La.12/14/04), 888 So.2d 848. To constitute “just cause,” a parent’s failure to support, visit, or communicate with his children must be due to factors beyond his control. Id.
In this case, B.L.M. (and L.P.W.) asserts that, pursuant to La. Ch.C. art. 1245(C)(2), M.P.W.’s consent was not necessary for the intrafamily adoption of S.J.W. and A.E.W. because M.P.W. had failed to visit, communicate, or attempt to communicate with either S.J.W. or A.E.W. for a period of more than six months. M.P.W. does not dispute that he failed to visit or communicate with the children for more than six months; however, he claims that his failure to do so was with “just cause,” given that the January 23, 2012 consent judgment (in which he gave up all his visitation and parental rights and which he claims is null) precluded him from contacting his children.[10]
M.P.W. first argues that his act of filing the petition to annul the January 23, 2012 consent judgment demonstrated an attempt to communicate or visit with the children, thereby interrupting the six-month time period. However, similar arguments have been rejected by the courts of this state. See In re Intra Family Adoption of A.G.T., 06-0805 (La.App. 5th Cir.3/13/07), 956 So.2d 641, 648 writ denied, 2007-0783 (La.5/4/07), 956 So.2d 611, and In re C.E.M., III, 2009-0787 (La.App. 5th Cir.1/26/10), 31 So.3d 1138, 1143 (both holding that filing a rule for visitation does not interrupt the six-month time period set forth in La. Ch. C. art. 1245(C)(2)). Accordingly, we find that the mere filing of the petition to annul the January 23, 2012 consent judgment was insufficient to interrupt the six-month time period set forth in La. Ch.C. art. 1245(C)(2).
M.P.W. next argues that he was precluded from contacting his children pursuant to the January 23, 2012 consent judgment, which constituted just cause 17for not attempting to visit or communicating with his children. In support of this argument, M.P.W. relies on the concurring opinion in In re J.A.B., 884 So.2d at 687-688 (Downing, J., concurring).
In In re J.A.B., 884 So.2d at 680, this court was faced with the issue of whether or not a consent judgment, wherein a father obtained a waiver of his child support obligation in exchange for his agreement not to visit or communicate with the minor child for two years while preserving joint custody rights under the prior consent judgment, served as “just cause” excusing *10 the father’s failure to “visit, communicate, or attempt to communicate with the child, ... [for] a period of more than 6 months,” thereby deeming his consent to the intra-family adoption necessary. After examining the applicable law and public policy behind a parent’s duty of support, this court specifically rejected the father’s argument that a reservation of his legal rights to joint custody of a child, whom he voluntarily agreed not to visit in exchange for a waiver of his monthly child support obligation for a period of over two years, could serve as “just cause” excusing his failure to visit, communicate, or attempt to communicate with the child. This court further rejected the father’s claim that his compliance with the consent judgment served as “just cause” pursuant to La. Ch.C. art. 1245(C)(2). In doing so, this court held that the father “voluntarily relinquished his right to see and communicate with his child in return for a financial benefit, ie., relief from his obligation to provide financial support for his child. A parent’s financial benefit cannot constitute ‘just cause’ for failing to visit or communicate with his child.” In re J.A.B., 884 So.2d at 682-683.
However, the concurring judge opined that compliance with a judicial decree may, under certain circumstances, constitute just cause for not visiting or communicating with a child. Specifically, it was noted that non-compliance with a court order was grounds for contempt and that there may be circumstances in Rwhich court-ordered non-communication with a child for extended periods might be justified. Thus, the concurring judge believed that whether compliance with a consent judgment constituted just cause should be determined on a case-by-case basis. In re J.A.B., 884 So.2d at 687-688 (Downing, J., concurring).
Under this rationale, M.P.W. claims that his compliance with the January 23, 2012 consent judgment constituted “just cause” pursuant to La. Ch.C. art. 1245(C)(2), because otherwise, his non-compliance with the judgment would have resulted in contempt charges against him. M.P.W. further points out that he requested visitation on September 25, 2012 through a letter sent by his counsel to counsel for L.P.W. and B.L.M. Interestingly, however, this request establishes that M.P.W. in fact was capable of attempting to visit or communicate with his children (ie., by sending a request to opposing counsel) without being in contempt of the January 23, 2012 consent judgment.
In this case, the record establishes that M.P.W. failed to visit, communicate, or attempt to communicate with his children from the time of the January 23, 2012 consent judgment until the September 25, 2012 letter by his counsel to counsel for L.P.W. and B.L.M, which was a period of more than eight months. Notably, M.P.W. could have sent the same letter to counsel for L.P.W. and B.L.M. requesting visitation with the children within the six month time period (and not have faced contempt charges); however, he failed to make such effort, or any other effort, toward communicating, visiting, or attempting to communicate with S.J.W. and A.E.W. within the statutorily required time. Thus, M.P.W.’s continuous failure to attempt to visit or communicate with the children was voluntary on his part and due to factors within his control. See In Re J.A.B., 884 So.2d at 683. Accordingly, we find no error in the juvenile court’s apparent determination that M.P.W. failed to visit or communicate, or attempt to communicate with S.J.W. and A.E.W. without just cause for a period of at least six months, and thus, that |aM.P.W.’s consent was not necessary for the intrafamily adoption by B.L.M. See La. Ch.C. art. 1245(C)(2).
*11 However, even where the other parent’s consent is obviated by failure to visit, the court must also consider what is in the best interest of the child in determining whether the adoption should proceed. In re J.A.B., 884 So.2d at 683. In fact, the primary consideration in adoption proceedings is whether the adoption is in the best interest of the child. Id.
Louisiana Children’s Code article 1255 provides:
A. The court, after hearing and after taking into consideration information from all sources concerning the intra-family adoption, may enter a final decree of adoption, or it may deny the adoption. The basic consideration shall be the best interests of the child.
B. When a court has granted custody to either the child’s grandparents or his parent married to the stepparent petitioner, there shall be a rebuttable presumption that this adoption is in the best interests of the child.
The courts have recognized that factors must be considered when determining the best interest of the child. In Re J.A.B., 884 So.2d at 684. The most important factors are the child’s relationships with his step-father and his natural father. Id. It is not enough to examine the love and home environment provided by the petitioner/step-parent. Id. The court must also examine the depth of the closeness of the child’s ties with the non-custodial natural parent, and the effect of which the loss of this relationship would have on the child. Id. Further, the court must consider the seriousness and finality of the severing of the relationship between the parent and child, as well as the importance and benefit to the child of a continued relationship with the parent. Id.
In this case, the juvenile court concluded that it was in the best interest of S.J.W. and A.E.W. for the intrafamily adoption by B.L.M. to take place. We have thoroughly reviewed the record, and considering the facts and evidence presented at the hearing, we find that the evidence overwhelmingly supports the eon-clusion |inof the juvenile court that the proposed adoption was in the children’s best interest. M.P.W. agreed, in open court and with the assistance of counsel, to terminate his custodial and visitation rights and to execute an act of surrender of his parental rights to both S.J.W. and A.E.W. M.P.W. executed the act of surrender, although it was not in authentic form as required by La. Ch.C. art. 1122.
The record does not establish that there is any “depth of closeness” between M.P.W. and A.E.W., since M.P.W. has never visited or communicated with A.E.W. since his birth on October 18, 2010. M.P.W. sought to disavow paternity of A.E.W., but apparently agreed to dismiss that action following the results of a paternity test. However, the testimony established that B.L.M. is the only father that A.E.W. has ever known.
With regard to S.J.W., the record reveals that M.P.W. made no efforts at visiting or communicating with S.J.W. from the time of the January 23, 2012 consent judgment until a single letter was sent by his counsel to counsel for L.P.W. and B.L.M. nearly eight months later on September 25, 2012. The record also establishes that M.P.W. was in arrears on support and had contempt proceedings pending against him relating to violations of the custodial decree of S.J.W., and that M.P.W. agreed to voluntarily terminate his custodial and visitation rights with the children and to execute a voluntary act of surrender in exchange for relief from all past and future support obligations, as well as the dismissal of the contempt charges against him.
*12 Finally, Dr. Alicia Pellegrin, an expert in the field of clinical psychology, opined that based upon the history of the family, her observations of the interactions of the family, and her professional experience, that the intrafamily adoption of S.J.W. and A.E.W. by B.L.M. was in the children’s best interest. Additionally, she testified that both S.J.W. and A.E.W. recognize B.L.M. as their primary male care-giver and parent. Thus, the judgment of the juvenile court |ngranting the intrafamily adoption of S.J.W. and A.E.W. by B.L.M. is neither manifestly erroneous nor clearly wrong.
CONCLUSION
For all of the above and foregoing reasons, the November 14, 2012 judgment of the juvenile court granting the intrafamily adoption of S.J.W. and A.E.W. by B.L.M. is affirmed.
All costs of this appeal are assessed to the appellant, M.P.W.
AFFIRMED.

. The Twenty-First Judicial District Court exercises original juvenile jurisdiction for its territorial jurisdiction pursuant to La. Ch.C. art. 302(2). As a court exercising juvenile jurisdiction, it has exclusive original jurisdiction over this adoption proceeding. See La. Ch.C. arts. 303 and 1180.

. The minor children, their biological parents, and their step-parent are referred to by their initials to preserve their anonymity in this confidential proceeding.

.L.P.W. is now ''L.P.M.” Although the petition for intrafamily adoption identifies her by her current name, L.P.M., in order to avoid confusion with the related appeal herein, M.P.W. v. L.P.W., 2013-0366 (La.App. 1st Cir. 11/1/13), 136 So.3d 37, 2013 WL 5872041, we will refer to her herein by her former initials, L.P.W.

. L.P.W. was pregnant with A.E.W. when the divorce proceedings between L.P.W. and M.P.W. commenced, and she gave birth to the child before the judgment of divorce was granted. Almost a year after A.E.W.'s birth, M.P.W. filed a petition seeking to disavow paternity of A.E.W. M.P.W. eventually dismissed the petition to disavow after obtaining the paternity test results.

. M.P.W.⅛ petition to annul the stipulated judgment was dismissed pursuant to a motion for summary judgment filed by L.P.W. The dismissal of that petition was appealed in and affirmed by this court in the related appeal, M.P.W. v. L.P.W., 2013-0366 (La.App. 1st Cir 11/1/13), 136 So.3d 37, 2013 WL 5872041.

. In the original petition, B.L.M. acknowledged that the children had not lived in his home for the requisite period of time required by La. Ch.C. art. 1243, as B.L.M. and L.P.W. did not live together until after their marriage. Therefore, an “interlocutory decree” of adoption was requested.

. This objection was not filed within the time period prescribed by La. Ch. C. art. 1244.1.

. At the hearing, the juvenile court also overruled the peremptory exception raising the objection of no right of action that M.P.W. had filed in response to the original petition, as the juvenile court found that the basis for the objection was cured by the supplemental and amended petition. See La. C.C. P. art. 934. Because the record reflects that the children had been in the physical custody of B.L.M. for a period in excess of six months on the date that the supplemental and amended petition for intrafamily adoption was filed, we find no error in the juvenile court's ruling in this regard. See La. C.C.P. art. 927(B).

. M.P.W. also argues on appeal that the juvenile court “erred in not ruling that the [supplemental and amended petition] did not relate back to the original date of filing." However, since the requirements of law for intrafamily adoption were met by the time the supplemental and amended petition was filed, see n.7, the issue of whether the petition "relates back” is not relevant. Rather, the only relevant issue is whether M.P.W. had "refused or failed to visit, communicate, or attempt to communicate with the children] without just cause for a period of at least six months.” See La. Ch.C. art. 1245(C)(2).

. In M.P.W. v. L.P.W., 2013-0366 (La.App. 1st Cir. 11/1/13), 136 So.3d 37, 2013 WL 5872041, we affirmed the dismissal of M.P.W.'s claim that the January 23, 2012 stipulated judgment was null.