397 So.2d 62 (1981)
Betty Toups PIERCE, Plaintiff-Appellee,
v.
Loyd J. PIERCE, Jr., Defendant-Appellant.
No. 14507.
Court of Appeal of Louisiana, Second Circuit.
March 23, 1981.
*63 Weinstein & Moak by Nelson A. Moak, Shreveport, for plaintiff-appellee.
Richie & Richie by C. Vernon Richie, Shreveport, for defendant-appellant.
Before PRICE, HALL and JASPER E. JONES, JJ.
JASPER E. JONES, Judge.
Defendant, Loyd J. Pierce, Jr., appeals a trial court judgment making executory $7760 in accrued child support owed plaintiff, Betty Jane Toups Pierce. We affirm.
Plaintiff and defendant were divorced on July 17, 1972. The divorce judgment awarded plaintiff custody of three minor children born of the marriage, and ordered the defendant to pay $60 per week child support. Plaintiff filed this action July 7, 1980 to have 156 weeks of child support made executory (for a total of $9360). Defendant made no child support payments following the divorce judgment until January 1980, when following the institution of a criminal nonsupport proceeding he commenced making child support payments which totaled $1600 at the time this suit was tried in September 1980.
Plaintiff and defendant entered into a community property settlement July 18, 1973 in which plaintiff received title to all the immovable property and some movable property belonging to the community:
"in full payment, satisfaction, acquittance and discharge of all sums and amounts which may be due and for all sums and amounts which would be due in the future... for alimony or child support..."
*64 Plaintiff "forever" released defendant from any alimony or child support obligation, "past, present or future."
In the community property settlement defendant conveyed to plaintiff the family home located on a lot in rural Webster Parish and the furniture located in the house. The immovable property was subject to a mortgage in favor of a Minden bank upon which defendant made no payments following the divorce. The house was in need of repair and after plaintiff acquired full title to it she borrowed on a second mortgage from another financial institution the sum of $5000 to repair it. She failed to repay this loan. She lost the house in a foreclosure proceeding. While the record does not clearly establish the value of the community property received by plaintiff in the settlement, from the facts which we do find in the record it is apparent that the property received by plaintiff from defendant could have been worth very little over $2500.
The trial court found defendant had paid $1600 on his child support obligation, and gave this amount as a credit against the $9360 sued for resulting in a judgment of $7760.
On appeal plaintiff contends that her agreement to waive future child support contained in the community property settlement is contrary to public policy, and for that reason unenforceable.
The obligation which this father, defendant, owes to his children emanates from LSA-C.C. art. 227, which reads:
"Fathers and mothers, by the very act of marrying, contract together the obligation of supporting, maintaining, and educating their children."
This obligation stems not from marriage, but from the paternity or maternity of the parent involved. Parents cannot permanently set aside a decree of child support. Walder v. Walder, 159 La. 231, 105 So. 300 (1925), and Dubroc v. Dubroc, 388 So.2d 377 (La.1980). The legal duty of support owed to a child cannot be renounced. A parent may suspend the right to collect the support by turning a child over to the parent who owes the duty of support, Dubroc, supra, but otherwise cannot, in suspending this right, thwart the enforcement of the child's right to support.
In Dubroc, supra, the court enforced an agreement by the mother to suspend the payment of court ordered child support by the father for the support of a son whose physical custody the mother surrendered to the father, who thereafter provided for the needs of the boy. The court here specifically recognized that such agreements which have the effect of depriving the child of needed support were unenforceable. The court stated:
"The parent may not, by suspension of this right, thwart the purpose for which the right is established, i. e., the enforcement of the child's right to support and upbringing.
For these reasons, an agreement by a parent to suspend his right to receive child support payments will not be enforced unless it meets the requisites for a conventional obligation and fosters the continued support and upbringing of the child. To allow the parent to suspend his right to receive support payments under circumstances contrary to the child's interests, would be inimical to the ultimate goal of support and upbringing of the child. On the other hand, if the parties clearly agree to a suspension of the payments, and such agreement does not interrupt the child's maintenance or upbringing or otherwise work to his detriment, the agreement should be enforceable." Id. at 380 (emphasis added).
We therefore hold that defendant here could not permanently evade his legal duty to support his children by agreeing to turn over all the community property to plaintiff. Defendant owes his children an obligation to support which cannot be erased by the community property agreement.
Defendant cites Monk v. Monk, 376 So.2d 552 (La.App. 3d Cir. 1979), for the proposition that child support can be waived. On December 2, 1977, during the period between *65 separation and divorce, Monk transferred to the wife title to community property in exchange for her waiver of alimony and child support. The divorce judgment obtained on December 3, 1977 awarded the mother custody of the child but no child support. In March 1978 the wife received $10,000 for the sale of eight of the 20 acres she had received in the property settlement. The wife sued for child support in July, 1978. The Third Circuit specifically held that the agreement could not waive forever the child's right to support. It also stated that the agreement waived the right to child support arrearages and to future child support to the extent of the value of the property received by the wife in the consideration of the waiver of the child support. The trial court, and the court of appeal, emphasized that the value of the property received should be considered against the expenses incurred in raising the child in order to determine whether plaintiff-wife was entitled to child support. It is significant that this case upheld the contract by stressing that the consideration received was so substantial that at the time of the suit, the mother could not have expended in support of the child the value of the property received by the mother in consideration for the child support waiver.
This case does not stand for the proposition that agreements to waive child support are fully enforceable; on the contrary it recognized the mother will have a valid cause of action for child support when she uses in support of the child all the consideration received for the waiver.
Appellant also relies upon the case of Seifert v. Seifert, 374 So.2d 157 (La.App. 1st Cir. 1979), which involved a rule to make past due child support payments executory. The mother had waived child support in order to improve the appearance of the father's financial circumstances for the purpose of aiding him to secure a Veterans Administration loan to buy a house. The First Circuit held that it was not contra bonos mores for a mother to waive child support. The First Circuit reasoned that a party in whose favor a judgment is rendered may waive rights under the judgment, citing Halcomb v. Halcomb, 352 So.2d 1013 (La.1977); Succession of Mioton, 201 La. 879, 10 So.2d 688 (1942); Henson v. Henson, 350 So.2d 979 (La.App. 2d Cir. 1977); Hodge v. Hodge, 338 So.2d 161 (La. App. 2d Cir. 1976); Caraway v. Caraway, 321 So.2d 405 (La.App. 2d Cir. 1975); writ denied 323 So.2d 479 (La. 1975); Silas v. Silas, 300 So.2d 522 (La.App. 2d Cir. 1974); writ refused 303 So.2d 177 (La.1974); Odum v. Odum, 273 So.2d 576 (La.App. 1st Cir. 1973); Duplechan v. Duplechan, 270 So.2d 264 (La.App. 3d Cir. 1972). Although it is generally true that a party receiving rights under a judgment may waive these rights, our brothers of the First Circuit failed to recognize the overriding duty of support which a parent owes a child. Dubroc, supra, emphasized this duty, which is not waivable indefinitely or for a permanent time, and stated that the legal obligation of nourishment, support, and rearing which a parent owes a child may not be renounced or suspended except in special circumstances which do not include a waiver which results in a denial of support to the child without providing for it in some other manner. We conclude that Seifert, supra, is contra to Dubroc, and decline to follow Seifert.
Under certain circumstances our jurisprudence has recognized that child support may be temporarily waived, as when a father (the non-custodial parent) takes custody of a child and the mother agrees to a reduction in child support, Dubroc, supra, or when a mother agrees to accept child support in the form of the father paying part of the mortgage on the family home, Hodge, supra, or when the mother agrees that the father may send the child support direct to the child who is away in college, Odum, supra. Child support has been suspended even when the mother did not specifically agree to the suspension when she delivered the physical custody of the children to their father who provided directly for their support. See Henson, Caraway, and Silas, supra.
The Succession of Mioton, supra, relied upon by Seifert, supra, involved the waiver *66 of alimony by a wife and is therefore inapplicable to a waiver of child support, and we also conclude that the Duplechan case cited by Seifert also was principally concerned with an alimony waiver by the former wife and is not authority for the waiver of child support. The alimony waivers in each of these cases were made by former wives to assist their former husbands who were having financial troubles. The waivers were enforced though supported by no consideration, and in this circumstance were similar to the child support waiver which was enforced in Seifert.
We rely upon the rule of Walder and Dubroc, supra, that the duty of a father to support a minor child is a continuing one and cannot be escaped by a waiver which purports to be permanent and everlasting in its import.
"Neither the parents nor a court decree can permanently set aside the duty of support." Dubroc, supra, at p. 380, Fn. 3.
The defendant owed plaintiff 52 weeks of child support or the sum of $3120 at the time the community property settlement was executed. This past due child support indebtedness we believe exceeded the value of defendant's one-half interest in the community which he conveyed to plaintiff. It is also significant that plaintiff did not seek to enforce the child support judgment for the 208 weeks following the community property settlement, being the period from July 1973July 1977, during which period defendant's accrued child support obligation would have been approximately $12,480. Under these circumstances any obligation he had to pay this sum prescribed. Plaintiff here only sued for the child support accruing during the 156 weeks preceding the institution of her suit on July 7, 1980.
These facts compel the conclusion that if the value of defendant's property received by plaintiff in the community property settlement were prorated against defendant's unpaid child support obligations set forth in the judgment, it would have been exhausted by plaintiff in support of the children long before July 1977. For this reason the agreement to waive the child support insofar as it is applicable to the child support here sued for is unenforceable because the agreement denied
"support payment under circumstances contrary to the child's [here children] interest, would be inimical to the ultimate goal of support and upbringing of the child." Dubroc, supra, at p. 380.
Appellant contends that plaintiff by executing the waiver of child support in the community property settlement is estopped to now claim child support under the judgment. He cites no case where estoppel has been applied to deny child support where it is necessary for the maintenance and upbringing of the child.
We note that the value of the property which defendant divested himself of in the community property settlement was far less than the child support owed under the judgment which plaintiff never sought to collect, and therefore, by executing the community property settlement defendant made no change of position to his detriment, and this is an essential element to the application of the doctrine of equitable estoppel. Wilkinson v. Wilkinson, 323 So.2d 120 (La.1975).
Defendant urges the defense of payment of his child support obligation by his conveyance of his one-half interest of the community property to plaintiff. Our earlier evaluation of the value of appellant's interest in the community property from the few facts available in the record on which to determine the value of defendant's interest clearly establish that appellant has made no payment of child support which was accrued in the judgment which he has appealed.
The judgment is affirmed at appellant's cost.