Judgment rendered August 17, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,734-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

LISA JEAN VOGLER                           Plaintiff-Appellant

versus

VERNON GERVIS                              Defendant-Appellee
AYRES, JR.

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 139,177

Honorable Robert Lane Pittard, Judge

* * * * *

DAVID L. WHITE                             Counsel for Appellant


SOCKRIDER, BOLIN, ANGLIN &                 Counsel for Appellee
BATTE, LLC
By:  D. Rex Anglin


* * * * *

Before MOORE, THOMPSON, and ROBINSON, JJ.

**ROBINSON, J.**

Vernon Gervis Ayres, Jr. ("Ayres") filed a rule to show cause on June 14, 2021, seeking to enforce a judgment dated October 23, 2014, which, in part, partitioned the former matrimonial domicile previously owned in indivision by him and Lisa Jean Vogler ("Vogler"), adjudicating ownership to Ayres and ordering that he refinance the property to remove Vogler from the mortgage. Ayres petitioned that Vogler be ordered to sign a deed transferring title to the property to Ayres and to cancel the notice of lis pendens filed by Vogler on May 3, 2021, because he could not sell or refinance the property without showing clear title.

Vogler filed an answer and reconventional demand on July 30, 2021, denying any obligation to facilitate clear title prior to Ayres' refinancing of the property, and claiming that the October 2014 judgment was null and void based on an impermissible waiver of child support.

Judgment rendered by the trial court on August 16, 2021, ordered Vogler to execute a quitclaim deed conveying all her interest in the property to Ayres in accordance with the October 2014 judgment, and directed the clerk of court to cancel the notice of lis pendens recorded by Vogler.

Vogler appeals the August 2021 judgment.

For the following reasons, we affirm the trial court and remand to the trial court with instructions.

## FACTS AND PROCEDURAL HISTORY

Vogler filed a petition for divorce on June 4, 2012, including a demand that child support be fixed. A consent judgment was entered on

August 2, 2012, awarding Vogler primary, domiciliary custody of their two minor children, ages 11 and 13 at the time. The parties stipulated that the children could move to Michigan with Vogler and provided for Ayres' reasonable visitation with the children in Louisiana, with all travel expenses to be paid by Vogler. Vogler's demand that child support be set by the court was reserved. The August 2012 judgment also divided separate and community assets and included an order that the separate, jointly owned marital residence be sold, with Vogler receiving a reimbursement for the down payment she made on the home and the parties splitting the remaining proceeds from the net equity.

Vogler filed a rule to show cause on January 6, 2014, asserting that Ayres failed to cooperate with the sale of the home and to divide a SEP IRA that the parties had acquired and contributed to during the existence of the marriage, pursuant to the August 2012 judgment, and that child support had not been set. Ayres filed an answer and reconventional demand on April 24, 2014, seeking to change custody of the minor children and requesting that child support be set, as well as requesting to purchase Vogler's interest in the marital domicile by refinancing and paying the existing debt and repaying Vogler the down payment and the remaining net equity.

Vogler filed a petition asserting that Michigan has subject matter and personal jurisdiction over the children and was the appropriate court for issues related to custody. An evidentiary hearing was conducted on July 14, 2014, and the trial court held that Louisiana had jurisdiction. Vogler filed a supervisory writ to this Court, which was denied.

A hearing was held on August 8, 2014, and the parties ultimately reached an agreement, forgoing the need for trial. The issues settled included: Vogler's continued custody of the minor children; satisfaction of any past due child support owed by Ayres to Vogler; no ongoing child support due to Vogler in exchange for Ayres' relinquishment of all child-related tax credits and deductions and Ayres' payment of all visitation expenses, including transportation costs; an award to Ayres of Vogler's entire share in the separate and community assets that had originally been divided by stipulation in the August 2012 judgment, including Vogler's interest in the marital residence; and Ayres' refinancing of the marital residence to remove Vogler from the mortgage.

A form and content hearing was held on October 23, 2014. The parties discussed the method for transferring the property, i.e., the timing of executing a quitclaim deed in conjunction with the refinancing or sale of the property, but no specific "vehicle" for the transfer was included in the judgment. Vogler also raised the issue of whether the child support "waiver" was contrary to Louisiana law, but the court found the particular issue to have been already resolved at the August 2014 hearing and outside the scope of a form and content hearing. With the exception of revising the judgment to correctly reflect the marital residence as separate, jointly owned property rather than community property, a judgment was entered on October 23, 2014, reflecting the issues settled upon by the parties at the August 2014 hearing, including directing Ayres to refinance the mortgage within 90 days.

On December 9, 2014, Ayres filed a petition seeking a judgment ordering Vogler to execute a deed transferring title of the subject property to

3

Ayres, alleging that he could not refinance the property without having a deed in his name. Two hearings were set, but the matter was ultimately abandoned. Ayres filed the October 2014 judgment in the conveyance records on June 14, 2018.

Ayres filed a petition on June 14, 2021, seeking a judgment ordering Vogler to sign a deed transferring her interest in the subject property to Ayres pursuant to the terms of the October 2014 judgment, because that judgment alone was insufficient to transfer title to a prospective buyer. He also requested the cancellation of a notice of lis pendens filed by Vogler on May 3, 2021.

Vogler filed an answer and reconventional demand on July 30, 2021, denying any obligation to facilitate clear title prior to Ayres' refinancing of the property and claiming that the October 2014 judgment was null and void based on an impermissible waiver of child support.

The trial court rendered a judgment on August 16, 2021, ordering Vogler to execute a quitclaim deed conveying all her interest in the property to Ayres in accordance with the October 2014 judgment and directing the clerk of court to cancel the notice of lis pendens. Vogler appeals the judgment.

**DISCUSSION**

*Absolute Nullity*

Vogler claims that the trial court erred in failing to address the past, present, and future waiver of child support contained in the October 2014 consent judgment that permanently relieved Ayres of his support obligation

4

to his minor children, and in failing to find that the waiver is a violation of public policy and an absolutely nullity and void from its inception.

Vogler further asserts that since the child support waiver is absolutely void, the entire agreement is tainted and all other provisions in the October 2014 judgment are also void, such that the trial court had no authority upon which to order her to sign a quitclaim deed in the September 2021 judgment.

Parents have a legal duty to provide support to their children that cannot be permanently renounced or suspended. *Dubroc v. Dubroc,* 388 So. 2d 377 (La. 1980). Thus, the courts of our state have long recognized that a judgment wherein a parent is permanently relieved of his obligation to support his minor children is an absolute nullity because it contravenes the public policy of this state. *Hebert v. Hebert,* 96–2155 (La. App. 1 Cir. 9/19/97), 700 So. 2d 958; *see also Walder v. Walder,* 159 La. 231, 105 So. 300 (1925); *Dubroc*, *supra*; *Pierce v. Pierce,* 397 So. 2d 62 (La. App. 2 Cir. 1981); *Richardson v. Richardson,* 427 So. 2d 518 (La. App. 3 Cir. 1983), *writ denied,* 433 So. 2d 182 (La. 1983); *Macaluso v. Macaluso,* 509 So. 2d 201 (La. App. 1 Cir. 1987). The public policy behind a parent's duty of support is to ensure, both for the sake of the child and the sake of the general public that might otherwise have to provide his support, that each child receives support sufficient for his maintenance and upbringing. *Macaluso*, *supra*.

Absolutely null judgments may be attacked collaterally, at any time, by rule or by any other method. *Hebert*, *supra*, *citing Garnett v. Ancar,* 203 So. 2d 812 (La. App. 4 Cir. 1967). *See also* La. C.C.P. art. 2002; *Nethken v. Nethken,* 307 So. 2d 563 (La. 1975); *Bass v. LaPorte,* 95–0867 (La. App. 1

Cir. 2/14/97), 691 So.2d 138, *writ denied,* 97–0646 (La. 4/25/97), 692 So. 2d 1088; *Webster v. Boh Brothers Constr. Co.,* 603 So. 2d 761 (La. App. 4 Cir. 1992). Estoppel or laches cannot arise against an absolute nullity. *Wilson v. King*, 227 La. 546, 79 So. 2d 877 (1955).

The applicable provision regarding child support in the October 2014 judgment reads as follows:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all pending actions of LISA JEAN VOGLER seeking an award of child support and/or accrual of allegedly past due child support are dismissed, with prejudice. Pursuant to the stipulation of the parties and their transaction and compromise, it is the order of this Court that VERNON GERVIS AYRES, JR. will not owe LISA JEAN VOGLER for any child support payments allegedly due as of the date of this judgment nor any prospective child support payments. This provision of this judgment excluding an obligation of child support on behalf of VERNON GERVIS AYRES, JR. is specifically approved by the Court in view of the other consideration expressed and contained herein including, by way of example, MS. VOGLER'S exclusive right to claim both minor children as dependents and exemptions every year and MR. AYRES' assumption of the cost of transporting the children for his Spring Break visitation every year as set forth in the Joint Custody Plan attached hereto.

The record indicates that a lump sum payment was made in consideration for the satisfaction of arrearages as of the date of the judgment. Therefore, only the portion of the judgment as it applies to prospective support is at issue in this case. It is clear that the terms of the judgment indicate the parties' agreement that Ayres would owe no child from the date of the judgment going forward, providing that Ayres "will not owe LISA JEAN VOGLER for any child support payments allegedly due as of the date of this judgment nor any prospective child support payments," and "[t]his provision of this judgment excluding an obligation of child support on behalf of VERNON GERVIS AYRES, JR."

The release of his obligation to provide child support following the October 2014 judgment amounted to a full and complete waiver of prospective child support, making this provision null and void as against public policy.

However, this Court rejects Vogler's argument that the *entire* October 2014 judgment is absolutely null and void due to the flawed provision regarding waiver of prospective child support. There is ample case law supporting that only the provision itself – not the entire agreement – is absolutely null and void.

The court in *Macaluso*, *supra*, held that the *portion* of a judgment making the payment of child support contingent on full compliance with the visitation ordered was an absolute nullity.

In *Walder*, *supra*, the wife filed suit to annul that portion of the judgment which relieved the husband of any future obligations to support the children. The court stated in its ruling that "[I]t should be observed that plaintiff is not suing to annul the agreement, made by her, to support her minor children, but the purpose of the suit … is to have the decree in the partition proceedings annulled or declared void, *in so far as* it purports to relieve defendant of all legal obligations to support his minor children… Hence the validity vel non of the agreement entered into between plaintiff and defendant does not enter into the case, but *only the decree* in said judgment"[.]" [*Emphasis added.*] *Id*.

In *Pierce*, *supra*, the plaintiff contended that her agreement to waive future child support *contained in* the community property settlement was

7

contrary to public policy, and for that reason unenforceable. The court in *Pierce* held that the mother had a valid cause of action for child support. *Id.*

In *Richardson*, *supra*, the court held that the *portion* of the judgment recognizing the waiver of future child support by the wife upon the acceptance of a certain lump sum payment from the husband, was null and void as against public policy. The case was remanded for a hearing *solely* on the issue of child support. *Id.*

Vogler cites *Hebert* when arguing for the nullity of the entire consent judgment. In *Hebert*, the consent judgment disposed of the issues of custody, use of the family home, health insurance, alimony, and child support, much like the case at hand. The defendant was to commence payment of child support only upon the parties paying off all community debts as specified in the judgment. *Hebert*, *supra*. The plaintiff filed a motion to rescind the consent judgment in its entirety because the judgment abrogated defendant's obligation to support his children *and* because her consent thereto had been vitiated by an error of fact concerning the principal cause, but she asked the court to then rule on the issues of child support, alimony, and use of the family home after the original consent judgment was rescinded. *Id.* The court found the *provision* to be clearly repugnant to defendant's obligation to support his children, thus absolutely null and void as against public policy. *Id.* It seemed to find the judgment itself to be absolutely null, but the ruling appeared to merely grant the plaintiff's motion to rescind the judgment in its entirety. We find this matter distinguishable because the plaintiff in *Hebert* had argued an error of fact concerning the principal cause; therefore, the child support provision was so intertwined

8

with the remaining provisions that it could not be nullified without affecting the entire judgment.

*Severability*

Vogler's argument that the October 2014 judgment contained no severability clause, such that the entire agreement is tainted by the *quid pro quo* negotiations in which Ayres agreed to dismiss his custody request, is wholly without merit. This Court is unaware of any requirement of a severability clause in consent judgments, and Vogler offers no support for such an argument. In fact, she points out that neither she nor her attorney cooperated in the signing of the judgment – further weakening any potential defect of form argument akin to that of contractual requirements.

In addition, it is undisputed that Vogler, an attorney, proposed the details of the October 2014 judgment. Both parties received benefits from their transaction and compromise, most significantly Vogler's continued custody of the two minor children after an allowed relocation to Michigan while Ayres stayed in Louisiana. Also, Vogler made no attempt to seek a declaration of nullity or to obtain a judgment of child support at any time after the October 2014 judgment until her July 30, 2021, filing of a reconventional demand seeking retroactive child support, despite being told by the trial court numerous times that she had the ability to do so. She operated under *all* provisions of the consent judgment for seven years, aside from the contested "vehicle" to be used in effectuating the transfer of her interest in the former marital domicile, seemingly acquiescing in the validity of *all* its terms, despite any doubts she may have expressed as to the child support waiver.

9

*Duress in Negotiations*

Vogler refers to the combination of the issues of child custody, property division, and child support during negotiations leading up to the October 2014 judgment, alleging that Ayres used the minor children as a "bargaining chip" to obtain additional assets and the waiver of child support. She further points out the pressure she was put under prior to executing the consent judgment, and the fact that she continued to have unresolved questions and hesitations.

It is commonplace for several issues to be discussed at once in family law matters such as this. However, there is no evidence in the record to support Vogler's contention that Ayres exhibited any wrongdoing as part of the negotiations. Had she legitimately believed that the terms to which she agreed in open court were unlawful in any way, those matters could have been taken up at the impending trial under the supervision of the trial court.

Consent is vitiated when it has been obtained by duress of such a nature as to cause a reasonable fear of *unjust* and considerable injury to a party's person, property, or reputation. La. C.C. art. 1959. The threat of doing a lawful act or exercising a right does not constitute duress. *Leonard v. Reeves*, 2011–1009 (La. App. 1 Cir. 1/12/12), 82 So. 3d 1250. Here, even if Ayres had threated to seek full custody of the children, the subject of that threat – seeking custody – is a lawful act and within his right to exercise. Therefore, such an action would not constitute duress resulting in the vitiating of consent.

### *Requirement of Quitclaim Deed; Contempt*

Vogler further argues that the trial court erred in ordering her to sign a quitclaim deed when the October 2014 judgment contained no provision requiring her to do so. She also claims the trial court erred when it failed to find Ayres in contempt for failing to refinance the debt on the separate, jointly owned property as required pursuant to the October 2014 judgment.

The judgment contains the following provisions, in pertinent part:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein partitioning the following assets:

I. VERNON GERVIS AYRES, JR. hereby receives and LISA JEAN VOGLER hereby grants, bargains, sells and coveys unto VERNON GERVIS AYRES, JR. with full guarantee of title and with complete transfer and subrogation of all rights and actions of warranty against all former proprietors of the property herein conveyed unto VERNON GERVIS AYRES, JR. all of her right, title and interest in and to the following described property:

A. LOT 3, WOODLAKE SOUTH SUBDIVISION, UNIT 3, A SUBDIVISION OF Bossier Parish, Louisiana, as per plat thereof recorded on Conveyance Book 808, pages 464-465 of the Conveyance records of Bossier Parish, Louisiana, together with all buildings and improvements thereon.

* * * *

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the parties hereby effect a division of the debts incurred either prior to, during or subsequent to the existence of their community of acquets and gains as follows:

III. VERNON GERVIS AYRES, JR. is hereby ordered to and does hereby assume full liability for, holding LISA JEAN VOGLER free and harmless from any future responsibility for the following debts:

A. Outstanding balance owed on any debt or promissory note secured by mortgage on the immovable property herein conveyed unto VERNON GERVIS AYRES, JR. VERNON GERVIS AYRES, JR. shall completely pay this debt within ninety (90) days by refinancing the existing real estate debt hereby assumed by him; …

11

The judgment is clear and unambiguous in its adjudication of the formerly co-owned property to Ayres. While the intent may have been for the judgment itself to effectuate the transfer, Ayres offered evidence showing that the title company would not continue with refinancing or approve a sale without a deed from Vogler transferring her interest in the property as provided in the judgment, as well as a cancellation of the notice of lis pendens filed by Vogler, so that Ayres would have clear title as the sole owner of the property. Vogler offered no evidence to the contrary, but merely argued that the judgment contained no specific direction to execute a quitclaim deed and that the judgment was nevertheless absolutely void due to the invalid waiver of child support. There also could have been other sufficient and reasonable means of transfer, but Vogler offered no evidence as to such alternatives.

A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished. La. C.C. art. 1906. A contract is commutative when the performance of the obligation of each party is correlative to the performance of the other. La. C.C. art. 1911. When there are reciprocal obligations, the obligor of one may not be put in default unless the obligor of the other has performed or is ready to perform his own obligation. La. C.C. art. 1993. A party to a commutative contract may refuse to perform his obligation if the other has failed to perform. La. C.C. art. 2022. As a general rule, a party suing to recover on commutative contract must allege and prove performance of his agreement. *Charles C. Cloy, Gen'l Contrs., Inc. v. DiVincenti Bros., Inc.*, 308 So. 2d 495 (La. App. 1 Cir. 1975), *writ denied*, 311 So. 2d 262 (La.

12

1975). Before a person can have a contract canceled on account of a failure of the other party to perform, such person must allege and prove that he himself has performed or offered to perform his part of the contract. *La. Farm Rice Bur. v. Miller*, 389 So. 2d 840 (La. App. 3 Cir. 1980), *Racca v. Zwan*, 194 So. 68 (La. App. 1 Cir. 1940).

Ayres' requirement to refinance the property and Vogler's requirement to transfer her interest operates as a commutative contract. The performance of one obligation is correlative to the performance of the other. Vogler argues at great length that Ayres cannot support his request that she sign a quitclaim deed because he failed to perform under the agreement by not refinancing within 90 days of the judgment. However, in order to be successful in such a claim, Vogler must allege and prove the performance of *her* agreement. In other words, she must prove that she has performed or offered to perform. Vogler has not performed under this commutative contractual agreement; therefore, she is barred from claiming Ayres' failure to perform.

Good faith governs the conduct of the obligor and obligee in whatever pertains to the obligation. La. C.C. art. 1759. A party to a contract has an implied obligation to make a good faith effort to fulfill the conditions of the contract. *Bloom's Inc. v. Performance Fuels, L.L.C.*, 44,259 (La. App. 2 Cir. 7/1/09), 16 So. 3d 476, *writ denied*, 2009–2003 (La. 11/20/09), 25 So. 3d 800.

We find that Ayres has made a good faith effort to fulfill the conditions of the commutative contract. As evidenced by his petition filed shortly after the October 2014 judgment, he did attempt to refinance the

13

property within the 90-day timeframe. He also filed the judgment itself in the conveyance records in an attempt to effectuate the transfer. Ayres later provided evidence of correspondence with the title company in which he was informed a deed would be required in order to close on the refinancing, and per his latest sworn petition, for the potential sale of the property.

***Child Support Guidelines***

The Louisiana Supreme Court in *Stogner v. Stogner*, 98–3044 (La. 7/7/99), 739 So. 2d 762, held that, "[n]otwithstanding the freedom of the parties to [enter into consent judgments], agreements may not 'derogate from laws enacted for the protection of the public interest.'" The Court held that, pursuant to La. R.S. 9:315.1(A) and (D), the trial court should have "consider[ed] the guidelines set forth [and] … review[ed] the adequacy of the stipulated amount," before the stipulated judgment was presented to it for signature, and further, that the trial court should have given oral or written reasons for warranting the deviation from the guidelines, La. R.S. 9:315.1(B).

There was no review by the trial court of the child support guidelines provided in La. R.S. 9:315.1 pertaining to the parties' underlying agreement regarding child support – for either the satisfaction of arrearages as of the October 2014 judgment by lump sum payment or the waiver of prospective child support following that judgment – nor were there any oral or written reasons for deviation therefrom in the judgment. Such failure to consider the guidelines and provide reasons for any deviation therefrom was error. However, this error does not result in absolute nullity of the child support

14

provision in any respect, but merely affects the basis for which an amount of child support is set.

La. R.S. 9:315.1 provides, in part, as follows:

A. …There shall be a rebuttable presumption that the amount of child support obtained by use of the guidelines set forth in this Part is the proper amount of child support.
B. (1) The court may deviate from the guidelines set forth in this Part if their application would not be in the best interest of the child or would be inequitable to the parties. The court shall give specific oral or written reasons for the deviation, including a finding as to the amount of support that would have been required under a mechanical application of the guidelines and the particular facts and circumstances that warranted a deviation from the guidelines. The reasons shall be made part of the record of the proceedings. …

Subpart C provides a list of the court's considerations in determining whether to deviate from the guidelines.

This Court directs the trial court to use the guidelines provided in La. R.S. 9:315.1(C) to establish child support as of the rendering of the August 2014 judgment (as a result of this Court's finding that the *portion* of the provision in the judgment regarding prospective child support amounted to a waiver in violation of public policy, rendering that *portion* of the provision absolutely null and void). In addition, the trial court is to consider the guidelines pursuant to La. R.S. 9:315.1(D) to review the adequacy of the stipulated amount for arrearages paid by lump sum as of the filing of judgment (as a result of this Court's finding that the *portion* of the provision in the judgment regarding satisfaction of child support arrearages prior to the judgment was permissible and valid).

This Court would draw particular attention to that portion of La. R.S. 9:315.1 which authorizes a trial court to deviate from the child support guidelines "if their application … would be inequitable to the parties." The

15

record is devoid of any specific information to enlighten this Court as to the parties' financial positions (1) in August 2012 when child support was first ordered in favor of Vogler upon the parties' divorce, and (2) in August 2014 when Ayres made a lump sum payment for arrearages for the period leading up to that point and when, resultingly and retroactively, prospective child support was never set due to an invalid waiver. However, this Court *does* have information in the record as to certain considerations which would make the application of the guidelines inequitable to the parties.

First, the terms of the consent judgment were presented by Vogler herself as a result of the looming uncertainties of an impending trial. It is undisputed that there was a very real possibility that Vogler was about to lose custody for several reasons. Vogler proposed that she maintain custody of the children in Michigan and that Ayres be responsible for 100% of any and all visitation transportation costs, while she would forfeit certain community property and other reimbursement rights related to the former marital domicile and waive *future* child support. Through true transaction and compromise, she received her desired benefits of the bargain. The ultimate determination that there was an impermissible waiver of future child support, rendering such provision absolutely null and void as against public policy and requiring that child support be retroactively set in accordance with the guidelines, creates a problematic imbalance in what was, at the time of the consent judgment, considered to be an even, bargained-for exchange.

In the interest of equity, credence must be given to the fact that, in exchange for the waiver of future child support and other considerations,

16

Vogler received custody of her minor children, ages 15 and 13 at the time, who would reside with her in Traverse City, Michigan, over 1,000 miles away from their father in Benton. Vogler filed her most recent petition on July 30, 2021, requesting nullity of the October 2014 judgment entered seven years before, several years after the children reached majority. This valuable consideration – the time spent raising minor children – cannot be nullified to offset the nullity of the impermissible waiver of child support.

In addition, the record shows that Vogler was, at the very least, aware of the possibility that the provision regarding future child support was an impermissible waiver. She admittedly discussed the issue with her attorney at the time the August 2014 was rendered, and brought up the issue in open court at the form and content hearing in October 2014. The trial court judge repeatedly informed Vogler that she would be able to address the child support issue at a later date. He did not entertain an argument on the issue at the hearing in which the consent judgment was entered because the parties were set for trial. If Vogler had hesitations regarding the issue of child support or felt in any way that the consent judgment did not support the parties' agreement, she could have – and *should* have – proceeded with trial as scheduled. She also brought up the issue at the form and content hearing wherein the trial court again rightfully refused to hear argument outside the scope of the hearing.

It must also be mentioned that Vogler was represented by counsel during negotiations, during the hearing regarding the consent judgment and throughout the majority of the matter with the exception of a brief period of time during which the form and content hearing was held. More

importantly, she was a licensed attorney herself. As such, she is held to a higher standard, not only as to her knowledge of the law, but ethically and morally. She knew at the time of the consent judgment that there was an issue with the validity of the future child support provision, yet she followed through with the entering of the judgment. She also operated under the terms of that judgment – which *she* proposed – for seven years as if she acquiesced in its validity, only to contest its legitimacy once she received *her* benefit of the bargains.

In addition to its determination of child support, "[i]n no event shall the court set an award of child support less than one hundred dollars, except in cases involving shared or split custody." La. R.S. 9:315.14. No matter the trial court's determination as to support pursuant to the guidelines and deviation therefrom, the amount set cannot be less than $100.00. Also, should the trial court find that the lump sum amount paid by Ayres in satisfaction of arrearages at the time was excessive per the guidelines such that a deviation is justified, the revised support amount should not be less than $100.00, and any excess should be used to offset the future child support amount determined. The trial court must also consider any expenses actually paid by Ayres as an offset against what is to be determined as the total amount of child support due from the rendering of the August 2014 consent judgment to the age of majority for each child. This would include, but not be limited to, any amount previously paid for arrearages as of the August 2014 judgment considered to be excessive per the guidelines, any visitation travel expenses, and any other expenses paid for and on behalf of the minor children.

18

**CONCLUSION**

For the foregoing reasons, this Court AFFIRMS the trial court's judgment rendered on August 16, 2021, ordering Vogler to execute a quitclaim deed conveying all her interest in the property to Ayres in accordance with the October 2014 judgment, and directing the clerk of court to cancel the notice of lis pendens recorded by Vogler. However, this matter is REMANDED to the trial court for determination of child support pursuant to La. R.S. 9:315.1 and as consistent with this opinion. Each party is to bear his or her own costs of the appeal.

**AFFIRMED AND REMANDED.**